Claude E. CORN, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 3650.

United States District Court
S. D. Florida,
Tampa Division.

June 2, 1960.

Each of these decisions denied Plaintiff's application for the establishment of a period of disability and for disability benefits under Sections 216(i) and 223, respectively, of the Federal Social Security Act, as amended (42 U.S.C.A. §§ 416(i) and 423).

The jurisdiction of this Court is based upon Section 205(g) (42 U.S.C.A. § 405 (g)) of the aforesaid Act. The case is now presented for decision by Plaintiff's motion for judgment on the pleadings [1] filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A.

The issue as stated by the Defendant's Referee was "whether or not since November, 1953, the alleged date of the onset of [Plaintiff's] impairments, or commencing anytime during the period when the earnings requirements were last met on September 30, 1955, and continuing thereafter to the date the applications were filed, the claimant has been unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which may be expected to result in death or be of long-continued and indefinite duration." [2]

George Ericksen of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiff.

James F. Guilmartin, U. S. Atty., Robert F. Nunez, III, and Don M. Stichter, Asst. U. S. Attys., Tampa, Fla., for defendant.

WHITEHURST, Chief Judge.

Plaintiff's Complaint initiating this action seeks review of respective decisions of the Referee and Appeals Council, Department of Health, Education and Welfare, Social Security Administration.

■ The sole issue to be determined by this Court, as raised by the complaint and answer, is whether the Plaintiff became so disabled during the aforesaid periods as to render him unable to "engage in any substantial gainful activity" within the meaning of Sections 216(i) and 223(c) (2) of the Act (42 U.S.C.A. §§ 416(i) and 423(c) (2)). The burden of proving a disability of the defined severity is upon the claimant, and the finding of the Referee is conclusive upon a reviewing court if supported by substantial evidence. 42 U.S.C.A. § 405(g); Varnado v. Flemming, D.C.E.D.La.1959,

1. Section 205(g), 42 U.S.C.A. § 405(g), requires the Secretary to file, as part of his answer, "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." The same section limits the power and duty of this court to a review of the pleadings and transcript of the record. Plaintiff's motion is therefore appropriate, and it poses the case for final determination.

2. Plaintiff's last application was filed on May 9, 1957, stating a disability, within the meaning of the Act, commencing November, 1954.

175 F.Supp. 706 and authorities cited therein.

The evidence and factual findings of the Referee disclose that the Plaintiff was born September 28, 1900. His education consisted of eight years of elementary school and some study in a business course. His last employment was with the B. F. Goodrich Company, Akron, Ohio, where he was employed for over twenty-one years. In November of 1953 he was given a medical leave of absence, and was finally retired by his employer in December of 1954, on a permanent and total disability basis. Plaintiff's job with the Goodrich Company apparently consisted primarily of manual type labor in the maintenance department. In 1950, however, and up to the time of his retirement, the Plaintiff was placed on a restricted basis for medical reasons and was tried on several jobs, the last being as an elevator operator.

The medical evidence upon which the Referee made his decision is composed of reports by several physicians who are unanimous in diagnosing Plaintiff's malady as arthritis of the spine. A detailed analysis or explanation of Plaintiff's condition and its manifestations, as revealed by the record as a whole, would only serve to unduly prolong this opinion. A brief resume of the conclusions of the respective physicians, and the weight and treatment given them by the Referee, will suffice.

Two of the doctors were of the opinion that the Plaintiff is permanently and totally disabled; one of these, a Doctor Taxdal, has been the Plaintiff's personal physician since February of 1954, and his report specifically states that Plaintiff has been unable to perform any work since November of 1954. The report of a Doctor Jukes dated December 30, 1955, states that Mr. Corn has suffered a "progressive disability over a period of several years * * * ", and that "he has

been unable to work since November, 1953." Dr. Jukes' concluding remark was: "Permanently and totally disabled from performing factory work at the B. F. Goodrich Co. in December, 1955." [3] An earlier report of the same physician concluded that Mr. Corn would "never be able to perform a useful job in the factory," and that he should be regarded as "totally and permanently disabled from doing any work at the Akron plant of the B. F. Goodrich Company." Similarly, the report of a Doctor Hurteau dated September 16, 1955, concluded that the Plaintiff was unable to do any work at his former employer's plant.[4]

The opinion of a Doctor Davis dated October 4, 1955, concluded that Mr. Corn was "greatly handicapped at the present time," and was consequently "unable to compete in heavy manual labor." The Doctor felt that Plaintiff might be capable of performing some light work "although admitting that he has some permanent disability as a result of his arthritis." Finally, the report of a Doctor Doran dated June 25, 1954, which is *prior* to the date Plaintiff alleged as the commencement of his disability, indicated that Plaintiff should seek "employment routines of a less arduous nature and a better climate."

The Referee's written opinion and decision, a part of the record, discusses each of the medical reports as well as the testimony of Mr. Corn. In reaching his decision that the Plaintiff was not so disabled as to prevent him from engaging in "any substantial gainful activity," the Referee places particular emphasis on certain phrases in a minority of the reports, and even these were largely taken out of context. Specifically, the Referee points to the use of the words "factory work" in Doctor Jukes' report, and to the mention of "light occupation" in Doctor Davis' report. Also relied upon is the report of Doctor Doran, although as previously noted, this report antedates

3. The record indicates that the reference to December, 1955, was a typographical error. The date intended was December, 1954.

4. Several of the reports refers specifically to B. F. Goodrich Co., because they were prepared in connection with Plaintiff's retirement.

the alleged time of beginning of Mr. Corn's disability.

■■ On the basis of the entire record, this Court is unable to conclude that there is any *substantial evidence* which would support the decision of the Referee. The reliance of the Referee upon isolated remarks in two or three of the many reports before him is not enough to meet the test.[5] See e. g. Aaron v. Flemming, D.C.M.D.E.D.Ala.1958, 168 F. Supp. 291, and the definition of "substantial evidence" therein referred to by Circuit Judge Rives. Moreover, and perhaps most important, this Court is convinced that the Referee erroneously construed and applied the statutory test of "substantial gainful activity".

On at least two occasions in his opinion and decision, the Referee specifically emphasizes that Plaintiff is not *totally* disabled. It is obvious that the Referee tended to equate inability to engage in substantial gainful activity with total disability. As stated by Judge Rives in Aaron v. Flemming, supra, at page 295:

> "Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bed-ridden', or 'at death's door'. No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform '*any* substantial gainful activity'. I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door."

■ Similarly, the Referee on occasion referred to "gainful activity". This usage, and its application to the Plaintiff's case, also demonstrates a misconception of the emphasis in the Act. In Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 44, 49 the Court correctly observed:

> "It should also be noted that the word 'substantial' as used in Secs. 416 and 423 does not modify 'gainful', but rather modifies 'activity'. The activity in which the plaintiff must be able to engage must not only be 'gainful' but it must also be 'substantial'. The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage."

That the Referee was using a conception of "substantial gainful activity" that is legally unacceptable is, furthermore, patently clear from the statements which he made during his interrogation of the plaintiff at the hearing. At one point he observed: "Of course, the type of work I am referring to, Mr. Corn, is not where you get on *regular, steady* work, because in your condition you certainly couldn't accomplish that sort of thing"; and, at another point: "Of course, those were things where you wouldn't work certain definite hours, and so forth. What I am inquiring about is *not* that regular, steady job of employment". Thus, it is apparent that the Referee was considering as "substantial gainful activity" some slight work of an irregular, spasmodic character, even though subject to frequent interruptions because of the plaintiff's pain or other characteristics of his ailment.

As was pointed out in Lease v. Flemming, D.C.D.Md.1959, 178 F.Supp. 169, the definition of disability under the Social Security Act is substantially the same as it was under the old War Risks Claims Act from which a substantial body of authoritative precedent has been established. In a case in the Court of Appeals for the Fifth Circuit, decided under the latter Act, Ross v. United

5. The remarks concerning the Referee's decision are intended to apply equally to the decision of the Appeals Council, affirming the Referee.

States, 5 Cir., 1931, 49 F.2d 541, 542, it was said:

> " * * * To be able 'to follow any substantially gainful occupation,' within the practical common-sense meaning of the phrase, *implies ability to work at it all the time.* * * * " (Emphasis supplied.)

Similarly, following the Ross decision, the Fifth Circuit held that even the ability to engage in " * * * employment for limited periods does not defeat recovery, if it is reasonably certain that disability beginning while the policy was in force would prevent the insured from continuously following a substantially gainful occupation." Thus, the court held that the plaintiff was disabled to the required extent despite the opinion of one doctor that "light employment would be beneficial" and the fact that plaintiff had worked for as much as nine months, on one occasion, during the period of alleged disability. United States v. Sanford, 5 Cir., 1934, 73 F.2d 233, 234.

■ Despite the Referee's search for even the most inconsequential area of employment where the plaintiff might be useful, and under a very expanded definition of "substantial gainful activity", he was unable to discover any particular, specific area of employment or employable activity in which the plaintiff might have been fitted. He found as a fact that the plaintiff has a disease "which has incapacitated him insofar as performing factory work". So far as the record discloses, "factory work" which necessarily includes such light tasks as elevator operator, (a job that the plaintiff was unable to perform) encompasses the full scope of the activities for which this plaintiff is fitted by education, experience and ability. At least for a period of over 20 years, he did nothing else. See Adams v. Flemming, D.C.D.Vt.1959, 173 F.Supp. 873; Klimaszewski v. Flemming, D.C.E.D.Pa.1959, 175 F.Supp. 927; and Lease v. Flemming, supra, indicating in similar situations, that proof of inability of a claimant to further engage in his usual or lifelong occupation was sufficient to carry his burden of proof in the absence of some *definite* evidence as to other work which he could perform. In United States v. Jones, 5 Cir., 1934, 73 F.2d 376, 377, Judge Hutcheson set out the rule concerning this shifting burden of coming forward with evidence. " * * * it may not be doubted that proof of complete disablement from doing the work he was accustomed to do before he received his injury is proof, so far as it goes, of total and permanent disability * * * ". But, he continues, "where there is *evidence* that there are *other occupations* which he could follow, his proof must go on. * * * " to negative that evidence.

■ In this instance, as in the cases cited above, there was no evidence of any other occupations that the plaintiff might follow, subsequent to his admitted disablement from all factory work. Mere abstract speculation by the Referee or Appeals Council as to a possible avenue of employment for a claimant is not "evidence" which a claimant should be required to refute; if it were, disability would become a meaningless word.

■ In the Referee's summary survey of the medical reports there is a complete omission of any reference to the adjective "substantial". The statement of Dr. Jukes that plaintiff might have been able to perform "a light job if such were available" does not represent evidence of his ability to engage in "substantial" activity. The reference to the report of Dr. Davis that the plaintiff could engage in "*some* activity" again ignores the requirement that the activity be substantial. The reference to the report of Dr. Hurteau that the plaintiff was not "totally incapacitated from all kinds of work" again ignores the factor of substantiality with respect to any suggested activity. And the final finding with respect to the medical reports of these three physicians that the plaintiff was not so disabled "that he could not engage in some gainful activity", does not even suggest that plaintiff could engage in *substantial* activity. Thus, taking the most charitable view of the Referee's

findings based on the evidence, they do not support the legal conclusion that the plaintiff failed to meet the test of the statute.

There remains for consideration only the decision of the Appeals Council confirming that of the Referee. It might be mentioned, in this respect, that the failure of the Appeals Council and the Referee to distinguish between findings of fact based on the evidence and their legal conclusions concerning the application of the evidence, presents a considerable difficulty for the court in this review. In particular, however, we must consider in this respect only the Appeals Council's characterization of the reports of Dr. Mabon and Dr. Warson, which were added to the record in 1958 by the Appeals Council. Dr. Mabon's conclusion with respect to the plaintiff, as contained in his report, is inconsistent with the characterization made of it by the Appeals Council. It is quite plain from the last paragraph of Dr. Mabon's report that in terms of the plaintiff's work experience (work of a manual character) he has had, and has, no significant employable future. The apparent effort of the Appeals Council to treat Dr. Warson's report as though it represented an opinion on a separate and distinguishable mental disability is inconsistent with Dr. Warson's conclusion that the plaintiff *has* a somatic disability on which there is a neurotic "overlay".

These reports considered together are significantly confirmatory of the various previous reports which were before the Referee, particularly with respect to the permanent nature and significant conjunction of the somatic and phychotic factors which generated the decision of B. F. Goodrich Company in 1954 that he could not perform any labor within his previous many years of work experience with that company, or with respect to any work functions to which they might accommodate his abilities, such as the relatively insubstantial employment of elevator operator. Many recent decisions concerning this subject are indistinguishable, either in princi-

ple or on the evidence. See e. g., Dean v. Flemming, D.C.E.D.Ky.1959, 180 F.Supp. 553; Lewis v. Flemming, D.C.E.D.Ark. 1959, 176 F.Supp. 872, each involving plaintiffs suffering arthritic conditions of the spine. Also, Varnado v. Flemming, D.C.E.D.La.1959, 175 F.Supp. 706 involving medical reports peculiarly parallel in effect to those in the instant case, and Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731 noting approval of many of the District Court decisions cited herein.

The Court has only one further comment. Plaintiff has requested relief with respect to a period of disability beginning in November of 1954. So far as the record is concerned, it would be the Court's conclusion that it would substantiate the date of disability as of that date, which is the apparent date he was determined to be totally disabled under the procedures followed by his then employer, B. F. Goodrich Company. However, the medical examinations involved in that determination occurred substantially between some date prior to November of 1954 and September of 1955. The coverage date established by the opinion of the Appeals Referee expired on September 30, 1955. The evidence establishes that the plaintiff was disabled, within the meaning of the statute, at some time prior to September 30, 1955. The evidence also establishes that there may be some question concerning the precise date of the occurrence of the disability prior to September 30, 1955. In order to avoid what appears to the Court to be an inconsequential part of the controversy, the Court has selected the date of September 30, 1955, for the purpose of determining that as of or before that date the plaintiff has established that he is totally disabled so as to be entitled to the establishment of a period of disability and to disability benefits.

On the whole record, and particularly in view of the limited and incorrect definition which both the Referee and Appeals Council have given to the phrase "substantial gainful activity", the Court concludes that the decisions of the Referee and Appeals Council denying plain-

tiff's application for the establishment of a period of disability and disability benefits were not supported by substantial evidence, and that they should be set aside; and Judgment will be entered for plaintiff.