Lillie A. SNYDER, Appellant,

v.

Abraham A. RIBICOFF, Secretary of the Department of Health, Education and Welfare, Social Security Administration, United States of America, Appellee.

No. 8601.

United States Court of Appeals Fourth Circuit.

Argued June 6, 1962.

Decided Aug. 30, 1962.

John Bolt Culbertson, Greenville, S. C., for appellant.

John C. Eldridge, Attorney, Department of Justice (William H. Orrick, Jr., Asst. Atty. Gen., John C. Williams, U. S. Atty., and Alan S. Rosenthal, Attorney, Department of Justice, on the brief), for appellee.

Before HAYNSWORTH and J. SPENCER BELL, Circuit Judges, and CRAVEN, District Judge.

HAYNSWORTH, Circuit Judge.

Mrs. Snyder has appealed from an order of the District Court affirming the denial by a Hearing Examiner of her application for a period of disability and for disability benefits under 42 U.S.C.A. §§ 416(i) and 423.

On November 23, 1959, Mrs. Snyder filed an application for disability benefits with the Bureau of Old-Age and Survivors Insurance of the Social Security Administration. She asserted disability, commencing April 24, 1956, on the basis of a ruptured bladder. The medical evidence shows conclusively, however, that Mrs. Snyder's difficulty with the bladder did not commence until 1958, some two weeks before she submitted to remedial surgery.

Mrs. Snyder had no earnings creditable for social security purposes after the last quarter of 1954. Her eligibility under the Act expired at the end of the third quarter of 1956.[1] She has no entitlement to disability benefits unless she became totally disabled within the meaning of the Act on or before September 30, 1956. It was proper, and far from inappropriate for the Examiner to develop her complete medical history, and her physical condition at the time of the hearing, but the Examiner also correctly recognized that impairments having their beginnings after September 30, 1956 could not form a basis of an award in Mrs. Snyder's favor.

The evidence discloses that Mrs. Snyder who was born in 1909, was injured in an automobile accident when approximately fifteen years old. An orthopedic examination in 1960 showed some distortion of the pelvic outlet, the left hip being at a different angle from the right, and an abnormality of the lumbar spine at the L–3, L–4 level. The orthopedist expressed the opinion that these deformities, apparently having a traumatic origin at the time of the automobile accident many years earlier, would lead to a hypertrophic arthritis. He thought it had not done so to any significant extent by 1960 and he was of the opinion she was not disabled at that time. His opinion is buttressed by the fact that Mrs. Snyder worked for many years after the automobile accident, apparently without difficulty, until she began to develop complaints of a very different nature.

In 1956, Mrs. Snyder developed an incisional hernia, an aftermath of an earlier Caesarean operation. She also had varicose veins and some difficulty with her reproductive organs. In May 1956, she underwent an operation for a com-

---

1. 42 U.S.C.A. § 416(i) (3). In the period of forty quarters ending September 30, 1956, she had qualifying earnings in twenty quarters. With no creditable earnings thereafter, she could not, after September 30, 1956, meet the eligibility requirement of twenty quarters of coverage in the period of forty quarters ending with the quarter in which disability occurred.

plete hysterectomy, at which time the incisional hernia was repaired and the varicose veins were removed from her leg.

In 1958, she suffered a prolapse of the bladder. By that time she had developed other complaints, too, so that on February 14, 1958 she again underwent surgery for a cystocele, a rectocele and for the removal of a urethral caruncle.

While the surgeons who performed the operations upon Mrs. Snyder in 1956 and 1958 were of the opinion that Mrs. Snyder was not disabled, her personal physician expressed the opinion that she had been disabled for some four years preceding 1961. He referred, among other things, to acute arthritis, anemia, low blood pressure, intercostal neuritis, heart trouble, weakness, swollen joints, headaches and the fact that she had twice undergone surgery—the hysterectomy and the correction of the prolapse of the bladder.

Other doctors who examined Mrs. Snyder in 1960 found her blood pressure normal, no anemia, no heart trouble, no swelling of the joints and no limitation of their movement.

A psychiatrist reached a diagnosis of severe chronic hypochondriasis with a poor prognosis.

At the hearing, Mrs. Snyder enumerater her many physical complaints. She attributed her claimed disability to the bladder trouble, but this, she admitted, had its onset in 1958.

On appeal from the order of the District Court affirming the determination of the Hearing Examiner, Mrs. Snyder contends, "There is substantial conflict in the medical testimony in this record." Her complaint is that the Secretary based his findings upon the testimony of some of the doctors rather than upon that of others. "There is no sound reason why he should do this," she says, " * * * It becomes simply a matter that the Secretary believes what he wants to believe and he disbelieves whom he wants to disbelieve."

■ The Act does not require administrative resolution of evidentiary conflicts in favor of the contentions of the applicant. The Hearing Examiner, subject to review by the Appeals Board, is to find the facts. He should approach that important function with a sense of fairness. He should seek the truth without predisposition to find for or against the claimant. He should consider the evidence objectively and make his findings dispassionately.

■■ When there has been an administrative determination, however, whether in favor of the claimant or not, there is no right to have the District Court review the factual issues. The District Court is required to accept the administrative findings if supported by substantial evidence.[2] That there may have been substantial evidence to support inconsistent findings has no bearing upon the District Court's inquiry. He must view the record as a whole, but not for the purpose of making independent findings. His task ends when he determines whether or not there is substantial evidence to support the administrative findings.

■ Since, concededly, there were substantial conflicts in the evidence as to Mrs. Snyder's physical condition in 1961, our inquiry might end there, for affirmance of the administrative determination was required. However, the picture is much clearer when viewed as of 1956, her last period of eligibility.

In May 1956, she had a complete hysterectomy. It was major surgery, but far from uncommon. Many women go through it without resulting permanent disability. The surgeon, who performed the operation, said it was successful, and he was of the opinion Mrs. Snyder was not disabled.

On September 30 of that year, there may have been some lingering impairment of normal physical capacity as a result of the operation in May. There was the pelvic and spinal deformity which resulted from the injuries she suffered

2. Bradey v. Ribicoff, 4 Cir., 298 F.2d 855.

more than thirty years earlier. The bladder trouble, to which she attributes her claimed disability, came on later. Most of her other infirmities and ailments, real or fancied, and those fancied may be real enough to a true hypochondriac, were of later origin.

Whether she may have become disabled later, the evidence is quite compelling in favor of the finding that she was not totally and permanently disabled, within the meaning of the Act on September 30, 1956, the last date of eligibility. The District Court, therefore, was quite right in concluding that the findings of the Examiner were supported by substantial evidence.

Affirmed.