**Elvia G. FREEMAN, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**No. C-53-R-62.**

United States District Court
M. D. North Carolina,
Rockingham Division.

Dec. 28, 1964.

Kennieth S. Etheridge, Laurinburg, N. C., for plaintiff.

William H. Murdock, U. S. Atty., Greensboro, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405 (g), of the final decision of the Secretary of Health, Education, and Welfare, denying her the establishment of a period of disability and disability insurance benefits.

The plaintiff first filed her application to establish a period of disability and for disability insurance benefits on October 26, 1960, alleging that she first became unable to work in August of 1954 because of an infected foot. This date of physical impairment was later changed to August of 1953, and in view of all the evidence in the case, the Court is convinced that the 1954 date inserted in the application was nothing more than a simple mistake, and that the true date of alleged disability was in August of 1953. When the application was disallowed, the plaintiff requested a hearing before a hearing examiner, and the requested hearing was held on September 20, 1961, before Hearing Examiner James L. Taylor. The plaintiff was not represented by counsel at this hearing. On October 4, 1961, the Hearing Examiner rendered his decision, finding that the plaintiff had not established that she had impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity on or before June 30, 1956, the last day she met the special earning requirements of the Social Security Act, as amended, and that she was not entitled to disability insurance benefits or to a period of disability. When the Appeals Council denied plaintiff's request for review, the opinion of the Hearing Examiner became the final decision of the Secretary.

On February 5, 1962, the plaintiff brought this action to obtain judicial review of the final decision of the Secre-tary, following which the plaintiff moved that the cause be remanded to the Secretary for the taking of additional evidence in accordance with § 203(g) of the Act. After considering the motion, and the briefs and supporting documents filed in support of and in opposition thereto, and the argument of counsel, an order was entered on May 18, 1962, remanding the cause to the Secretary for the taking of additional evidence. The hearing on remand was held on March 28, 1963, before Hearing Examiner, J. C. Goodwin. Plaintiff was represented by her present counsel at this hearing. On April 5, 1963, Hearing Examiner Goodwin rendered his recommended decision holding that plaintiff had not established her entitlement to either disability insurance benefits or to a period of disability under §§ 223(a) and 216(i) of the Act. The Appeals Council thereafter reviewed the recommended decision of Hearing Examiner Goodwin, and, on June 7, 1963, rendered its decision adopting and approving the recommended decision of the Hearing Examiner. Thus, the decision of the Appeals Council again became the final decision of the Secretary. After the matter was returned to this Court for judicial review of the proceedings before the Secretary, the defendant filed transcripts of all prior proceedings. The case is now before the Court on cross motions for summary judgment. Following the filing of briefs, the parties appeared before the Court and argued their respective contentions.

The issue for decision before the Secretary was correctly stated by Hearing Examiner Taylor as follows:

"The issues for decision are whether the claimant is entitled to disability insurance benefits under section 223(a) of the Social Security Act, as amended, and whether a period of disability may be established under section 216(i) of such Act. The issues are dependent upon specific findings as to whether at the time she filed an application on October 26, 1960, and while the special earnings requirements were met, the

claimant was under a disability in that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration and, if so, the beginning date of such disability. The claimant last met the special earnings requirements on June 30, 1956. The evidence must establish that the claimant was under a disability as defined in the Act beginning on or before June 30, 1956, for entitlement to disability insurance benefits or the establishment of a period of disability."

■■ The issue before this Court is the substantiality of the evidence to support the Secretary's findings on the issues before him. In Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964), the prescribed standard for judicial review is clearly set out by Chief Judge Sobeloff as follows:

"The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: ' * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958); 4 Davis, ADMINISTRATIVE LAW (1958) § 29.02, pp. 118–126. If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. Park v. Celebrezze, 214 F.Supp. 153 (W.D. Ark.1963); Corn v. Flemming, 184 F.Supp. 490 (S.D.Fla.1960). In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

The record before the Court discloses that the plaintiff was born on May 13, 1912, and has less than a fourth grade education. She worked in a textile mill from the time she was seventeen years of age until March of 1951, when her employment was terminated for the reason that she had been married in January of 1951 and was expecting a child. She has remained unemployed since that time.

The plaintiff's medical record dates back to 1942. On September 5, 1942, she was admitted to the Charlotte Memorial Hospital with the chief complaints of roundback, back strain and chronic arthritis. She related at that time that she had suffered with rheumatism since she was about five years of age and that her back had hurt "off and on since that time." She was treated with physiotherapy and fitted with a snug-fitting jacket. She was discharged on September 19, 1942, with the final diagnosis of lordosis, strain of back, arthritis, and rheumatoid ankles. The plaintiff was readmitted to the same hospital on February 22, 1946, for physiotherapy and the application of a plaster jacket to aid in

relieving pain from recurring back trouble. She was discharged as improved on March 3, 1946, with the final diagnosis of lordosis and strain of the back.

After the birth of her child in 1951, plaintiff's condition gradually grew worse. She was physically unable to take care of her child or do much of the housework. She was given an opportunity to return to her work in the textile mill in August of 1953, but on the day she was due to report for work she was admitted to the Scotland Memorial Hospital, Laurinburg, North Carolina, for an operation. Plaintiff had been referred to Dr. J. J. Richardson, of Laurinburg, North Carolina, a specialist in surgery, by her regular physician, Dr. J. G. Pate, now deceased, to perform the operation, and she has been seen by Dr. Richardson periodically since that time. At the time of her admission to Scotland Memorial Hospital on August 20, 1953, Dr. Richardson's examination disclosed the following:

"Examination at that time revealed that this patient had a rather marked deformity of her right foot and ankle with almost complete ankylosis or stiffening of the ankle joints on the right side and a very similar picture on the left foot and ankle with the exception it was not quite as severe. She had at that time, in addition to this, an acute abscess of the right ankle which required drainage and general examination revealed that she was slightly overweight. There was evidence of mild arthritis in her ankle joints at that time and also with her hip joints and in her back."

Dr. Richardson made an incision so that the abscess of the ankle would drain, and used antibiotics to combat infection. Dr. Richardson had been told by Dr. Pate at the time plaintiff was referred for surgery that plaintiff had been treated by him for many years for disabling deformity of her feet and ankles. X-rays made in 1953 had been misplaced, but Dr. Richardson used X-rays made in 1961 to illustrate his testimony. He stated that the 1961 X-rays were very similar to the X-rays made when plaintiff was hospitalized in August of 1953, except that plaintiff's condition had grown progressively worse. It was Dr. Richardson's opinion that plaintiff had experienced great pain in standing or sitting for any length of time since he first saw her in 1953, and that she had handled objects with difficulty during this entire period. He testified that plaintiff had a very definite organic disease which was demonstrated by X-ray, and that the disabling effect had slowly progressed over the years. He further stated that the disease was in advanced stages in 1953, and that the plaintiff had suffered from the condition since early childhood. It was his opinion that in 1953, and continuously since that date, plaintiff had been disabled to the point that she could not follow any gainful occupation, and that this condition would continue for the balance of her life.

On March 5, 1963, Dr. F. W. Clippinger, of the Duke University Medical Center, reported that the plaintiff gave a history of long-standing joint disease, and complaints that are usually seen secondary to arthritic problems. She was found to have limitations of motion which were marked in the feet and ankles, moderate in the hips and spine, and slight in the wrist and fingers. Dr. Clippinger reported that the symptoms of which plaintiff complained were in keeping with physical and X-ray findings. His prognosis was that the symptoms would gradually increase.

All the medical reports in the record, some relating to examinations conducted in 1961 and 1962, are consistent with the reports and testimony of Dr. Richardson. For example, Dr. Chalmers Vinson, of Laurel Hill, North Carolina, saw the plaintiff on September 29, 1960, and about twice a month thereafter until March 3, 1961. His findings were that plaintiff was gradually becoming more crippled by postural changes necessitated by the fibrous dysplasis in her feet, and that she would very likely be-

come a wheel chair invalid in the not too distant future.

The plaintiff testified at length at both hearings concerning her inability to engage in any substantial gainful activity since the birth of her child in 1951, and particularly since the operation performed by Dr. Richardson in August of 1963. She testified that her disability had been of sufficient severity to render her physically unable to perform any of her usual household duties such as cooking, washing and sweeping, and that most of these tasks were performed by her husband or other members of her family. Her husband and other lay witnesses corroborated her testimony in this regard in all material respects.

At the hearing conducted on March 28, 1963, the Secretary offered the testimony of Dr. Roy N. Anderson, a Professor at North Carolina State College, who qualified as a vocational expert. Dr. Anderson holds a Ph.D. degree from Columbia University. He testified that he had read the file in the case, examined all the exhibits, and had heard the testimony of all the witnesses who had testified at that hearing. He further testified that after considering the files and evidence in this case, and examining a recent publication of the Government which lists the amount of training and skill required for various positions in the textile industry, he was of the opinion that there were some textile jobs the plaintiff could perform. He felt that the plaintiff could qualify as a sewing machine operator, a folder of cloth, and perhaps could weigh textiles on scales. Dr. Anderson had no personal knowledge of plaintiff's physical condition, and possessed no ability beyond that of other laymen to evaluate her medical reports. The Dictionary of Occupational Titles, cited as a reference, referred to job classifications throughout the country, and the witness had made no personal investigation with respect to, and had no personal knowledge of, job opportunities in the community in which the plaintiff lived. He was not familiar with the mill operated by her former employer, and did not know whether any of the job classifications he had listed were available to anyone at that mill. The witness concluded by acknowledging that he did not know what facilities were provided for persons performing the job classifications he had listed, or whether the plaintiff could either sit or stand for any appreciable period of time.

Based on the foregoing, the Secretary was of the opinion that the plaintiff had not met her burden of proving that her impairments, either singularly or in combination, were of such severity as to preclude her from engaging in any substantial gainful activity at any time when she met the special earning requirements of the Act. It was found to be of some significance that a written report given by Dr. Richardson shortly before the hearing of September 20, 1961, and introduced in evidence at that hearing, and subsequent reports filed by Dr. Richardson, and the testimony he gave at the hearing conducted on March 28, 1963, were not consistent. This was explained by the fact that Dr. Richardson felt that the first hearing concerned only the physical condition of the plaintiff at that time, and that there was no occasion to furnish medical data on the physical condition of the plaintiff on some earlier date. In any event, the Court has carefully examined all the reports and testimony of Dr. Richardson received in evidence at both hearings, and is of the opinion that his testimony and reports received at the March 28, 1963, hearing are credible and worthy of belief. Furthermore, his testimony is entirely consistent with all the other medical evidence in the record, and is substantiated by X-rays and other objective findings. If the testimony of the plaintiff, her husband, and the other lay witnesses concerning subjective pain is to be believed, the plaintiff has been wholly unable to engage in any substantial gainful activity since August of 1953. While it is true that the plaintiff must establish a "medically determinable" physical or mental impairment, the

evidence of lay witnesses, as was recognized by the Appeals Council, is certainly competent to substantiate the expert medical testimony. As is set out in Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962), the relevant elements of proof are: (1) medical data, (2) expert medical opinion, (3) evidence as to the claimant's subjective pain, and (4) claimant's age and vocational background. Using the tests set out in Underwood as a guide, the Court is of the opinion that the uncontradicted evidence overwhelmingly demonstrates inability of the plaintiff to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment on June 30, 1956, and continuously thereafter, and that such impairment can be expected to result in death or to be of long continued and indefinite duration. Plaintiff is not required to prove her case beyond a reasonable doubt. All the objective medical findings and expert medical opinions clearly disclose a medically determinable disability within the meaning of the Act, and this evidence is corroborated in every material respect by all the lay testimony. The record discloses no substantial evidence to the contrary.

■ Virtually the only evidence in the record tending to support the Secretary's finding that the plaintiff was able to engage in substantial gainful activity on the critical dates is the testimony of Dr. Anderson. In considering this testimony, it is important to keep in mind that the employment opportunities must be actually, not merely theoretically, available. Also important are the plaintiff's age, limited education and restricted work history. The citing of catalogs or dictionaries "which list or contain capsule descriptions of thousands of jobs is unpersuasive." Hanes v. Celebrezze, 4 Cir., 337 F.2d 209 (1964). It

is not necessary that the plaintiff be bedridden to come within the provisions of the statute. Neither is it necessary that she verbally negative her capacity for, or availability to, each employment opportunity that might be suggested by a vocational expert. "Where the statute refers to 'any substantial gainful activity' the word 'any' must be read in light of what is reasonable and not of what is merely conceivable." Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964). As is set out in the Thomas case, where "the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing some of the 'non-physical, observational' jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation."

In sum, the entire record, as fully developed, leads only to the conclusion that the plaintiff was totally and permanently incapable of engaging in substantial gainful activity at the time of her various administrative hearings before the Secretary. The record, viewed as a whole, is equally convincing that such physical impairments had existed since at least 1953, long before she last met the special earning requirements of the Act. It follows that there is no substantial evidence in the record to support the decision of the Secretary.

Accordingly, for the reasons stated, the defendant's motion for summary judgment should be overruled and the plaintiff's motion for summary judgment in her favor should be granted. An order will be entered remanding the cause to the Secretary of Health, Education, and Welfare with the direction that the plaintiff be granted the period of disability and disability insurance benefits to which she would have been entitled had her initial application been approved.