Margaret H. WISE, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

No. C-191-S-70.

United States District Court, M. D. North Carolina, Salisbury Division.

Aug. 11, 1971.

Gerald R. Chandler, Albemarle, N. C., for plaintiff.

William L. Osteen, U. S. Atty., and J. Howard Coble, Asst. U. S. Atty., Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405 (g), of the final decision of the Secretary of Health, Education, and Welfare, denying her the establishment of a period of disability and for disability insurance benefits.

The plaintiff first filed her application for disability insurance benefits on March 17, 1969, alleging that she became unable to work in October of 1962, at the age of forty-seven, because of back condition, bursitis, heart attack, skin disease, and a partially numb left leg. The application was denied initially, and upon reconsideration. Plaintiff thereafter requested a hearing before a hearing examiner. The requested hearing was held on January 21, 1970, before Hearing Examiner Charles H. Evans. On April 16, 1970, Hearing Examiner Evans rendered his decision, finding that plaintiff was not entitled to a period of disability or to disability insurance benefits. The Appeals Council thereafter denied plaintiff's request for review, following which this action was instituted seeking judicial review of the final decision of the Secretary. The entire administrative record has now been certified to the Court, and the parties have cross-moved for summary judgment.

It is conceded that plaintiff last met the special earnings requirements of the Social Security Act for disability purposes on September 30, 1966. Consequently, it was her burden to establish that she was under a disability, as defined by the Act, beginning not later than September 30, 1966, which lasted for a continuous period of not less than twelve months.

Effective July 30, 1965, the Social Security Act was amended by defining the term "disability" to mean " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." The amendment had the effect of eliminating the requirement that the impairment be one which can be expected to be of long-continued and indefinite duration. Under the 1967 amendments to the Act, the statutory definition of "disability" was further clarified. These amendments provide that a claimant is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work," and the term "physical or mental impairment" is defined to be "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423.

"Work which exists in the national economy" is defined to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423. The 1967 amendments became effective on January 2, 1968, and apply to decisions in civil actions which had not become final before that date. Davis v. Gardner, 395 F.2d 681 (6th Cir. 1968); Daniel v. Gardner, 390 F.2d 32 (5th Cir. 1968). A reading of the legislative history of the amendments clearly discloses that Congress intended for the Secretary and the courts to be more restrictive in considering claims for disability insurance benefits, and intended that such claims be disallowed unless supported by clinical and laboratory findings, or other medically acceptable evidence.

The issue before the Court is the substantiality of the evidence to support the Secretary's findings on the issues before him. In Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), the prescribed standard of judicial review is stated as follows:

"The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: ' * * * The findings of the Secretary, as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir., 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate

their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3rd Cir. 1958); 4 Davis, Administrative Law (1958) § 29.02, pp. 118–126. If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. Park v. Celebrezze, 214 F.Supp. 153 (W.D. Ark.1963); Corn v. Flemming, 184 F. Supp. 490 (S.D.Fla.1960). In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

In Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969), the rule is expressed as follows:

"It is elementary that the Secretary's findings must be accepted if they are supported by substantial evidence. Laws v. Celebrezze, 368 F.2d 640 (4 Cir. 1966). It is equally clear that the reviewing court may not try the case de novo and substitute its own findings for those of the Secretary. Hicks v. Gardner, 393 F.2d 299 (4 Cir. 1968). From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber-stamping of the administrative action."

At the hearing conducted on January 21, 1970, plaintiff testified that she was born on May 4, 1915, and was 51 years of age in September of 1966 when she last had an insured status for disability purposes; that she completed four years of school; that at age 14, she started working in the textile industry and continued this employment for 33

years; that she worked on different jobs at different mills and had run winders and quillers; that her last job was as a knitter with Knitster Company, Albemarle, North Carolina; that she quit this job in October of 1962, at age 47, due to a disabling back condition; that she lives with her husband in a five-room home, which they own; that she and her husband do the housework, cooking, and shopping; that she drives a car for short distances and spends her time watching television, crocheting and knitting; and that she takes a yellow pill four times a day for her nerves and muscular spasms, a pink capsule every four to five hours as needed for pain, a tranquilizer five times a day for stomach trouble, and nerve pills as needed.

The only medical evidence of record pertaining to plaintiff's condition prior to September 30, 1966, when she last had an insured status, is contained in several records and reports from Dr. George E. Eddins, Jr., a well-qualified and respected internist in Albemarle, North Carolina. Dr. Eddins stated that plaintiff had been a patient of his since February of 1952. In a letter dated May 12, 1969, Dr. Eddins reported that plaintiff was hospitalized in Stanly County Hospital, Albemarle, North Carolina, on March 19, 1956, with complaints chiefly of pain in the left leg and back and numbness in the lateral ankle and 4th and 5th toes; that the pain grew more intense with coughing, straining, sneezing, and was also worse after walking or changing position; that X-rays at the time showed a narrowing of the lumbar sacral joint space with probable disc and also an incomplete neural arch defect in the 5th lumbar vertebra; that she was hospitalized for three weeks, after which she was able to return to work; that in October of 1962 she was again hospitalized with low back trouble; and that her final diagnosis was ruptured intervertebral disc at L5, S1 with right sciatic neuritis.

Plaintiff was admitted to the Stanly County Hospital on October 23, 1962, by Dr. Eddins. X-rays showed narrowed

sacral joint space with reaction probably secondary to degenerated disc. This condition had worsened since the X-rays in 1954. Plaintiff was discharged on November 7, 1962, with a final diagnosis of (1) ruptured intervertebral disc at L–5 and S–1 with right sciatic neuritis, (2) pylorospasm, (3) achlorhydria, and (4) mild psoriasis.

In his report marked as exhibit 14, Dr. Eddins stated that plaintiff was hospitalized by him in January of 1969 with an acute myocardial infarction; that other problems included rheumatoid arthritis; severe bursitis in the left shoulder, and an old disc with left sciatic neuritis; that psoriasis had been a smouldering problem for many years; and that plaintiff informed him that she was obliged to stop work in 1962. Dr. Eddins' impressions were (1) acute myocardial infarction, (2) question of gallbladder disease, (3) history of ruptured disc and left sciatic neuritis, (4) history of pylorospasm, (5) acute bursitis, left shoulder, (6) sliding hiatal hernia, (7) psoriasis, and (8) menopausal syndrome.

In a letter dated February 16, 1970, Dr. Eddins stated that plaintiff had been under his care since 1952, and that, based on various examinations, treatments, and personal familiarity with her condition, it was his opinion that she was physically unable to engage in substantial gainful employment activities between October of 1962, when she was hospitalized with a ruptured intervertebral disc with right sciatic neuritis, and September 30, 1966.

The remaining medical evidence concerns the plaintiff's condition after September 30, 1966, the expiration date of her insured status. On November 26, 1967, she was admitted to Stanly County Hospital because of nausea, vomiting, headaches and other symptoms. Flu was diagnosed, and plaintiff was discharged as improved on December 7, 1967.

On January 2, 1968, plaintiff was admitted to Charlotte Memorial Hospital, with complaints of low back pain. Straight leg raising was 80 degrees on

the left, negative on the right. Extremities were well within normal limits, and reflexes and motor power were symmetrical. There was spotty insensitivity to pain in both calves and on the left thigh, and also on the great toe bilaterally. Dr. F. W. Lee, an orthopedic surgeon, diagnosed chronic low back pain to be treated conservatively. Because of a question of possible functional component to low back pain, a consultation with Dr. H. F. Adickes, Jr., a psychiatrist, was obtained. The plaintiff complained of marked nervousness and back pain. She appeared comfortable, well oriented and alert. There was no evidence of memory loss or delusional thinking. Dr. Adickes diagnosed a chronic anxiety reaction with hypochondriasis and depression, and concluded the prognosis unfavorable because of duration and chronicity of the illness.

On January 22, 1969, plaintiff was admitted to the Stanly County Hospital with severe chest pain and was diagnosed as being acutely or even seriously ill. X-rays of the chest, gallbladder, left shoulder and upper gastrointestinal area were normal except for a small sliding hiatal hernia. An electrocardiogram showed a sinus tachycardia. A subsequent tracing was normal. Dr. Eddins diagnosed acute myocardial infarction, acute bursitis on left shoulder, sliding hiatal hernia, psoriasis, menopausal syndrome, and a history of old lumbar disc with left sciatic neuritis. Plaintiff was discharged on February 19, 1969. On March 24, 1969, Dr. Eddins reported that plaintiff had done fairly well since the hospitalization; and subsequently stated that the acute myocardial infarction was completely separate from her previous orthopedic problems.

■ If plaintiff is to be believed, there can be no question that she has been totally disabled since October 23, 1962. There is no hint or suggestion that plaintiff is a malingerer, and her credibility as a witness has not been questioned. Her inability to engage in substantial gainful activity is supported by Dr. Eddins, her family physician who has seen her repeatedly since 1952, and has reported that, in his opinion, plaintiff was physically unable to engage in substantial gainful activity between October, 1962, and September 30, 1966. While medical evidence of plaintiff's disability since her insured status expired is not determinative of her disability before expiration of her insured status, weight should nevertheless be given to these findings. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). It is perfectly evident that no weight whatever was given to these factors by the Hearing Examiner.

In evaluating the medical evidence, the Hearing Examiner stated that although opinion evidence of physicians on the subject of disability was admissible it was not conclusive on ultimate issues. In other words, as the Court understands it, the Hearing Examiner conceded that the uncontradicted evidence of both plaintiff and her family physician showed a disability during the period plaintiff had an insured status, but he nevertheless chose to ignore this evidence and make his own medical findings. This he may not do.

■ After reviewing the entire administrative record as certified by the Secretary, the Court is of the opinion, and finds as a fact, that the substantial evidence before the Secretary establishes the inability of plaintiff to engage in any substantial gainful activity by reason of medically determinable physical and mental impairments since she was hospitalized on October 23, 1962, which has lasted, or can be expected to last, for a continuous period of not less than twelve months, and that the record is barren of substantial evidence to the contrary. In finding that there is no substantial evidence to support the findings and conclusions of the Secretary, the Court has considered and applied the more restricted definitions of "disability," "physical or mental impairments," and the definition of "work which exists in the national economy," as contained in the 1967 amendments to the Social Security Act.

Since the findings of the Secretary are not supported by substantial evidence, and the conclusions he reached are irrational, it follows that the motion of the plaintiff for summary judgment should be granted, and that the motion of the defendant for summary judgment should be denied.

A judgment will be entered accordingly.