Gladys L. CARICO, Appellant,

v.

John W. GARDNER, Secretary of Health,
Education and Welfare, Appellee.

No. 10979.

United States Court of Appeals
Fourth Circuit.

Argued March 10, 1967.

Decided April 17, 1967.

Carl E. McAfee, Norton, Va. (Hugh P. Cline and Cline & McAfee, Norton, Va., on brief), for appellant.

William C. Breckinridge, Asst. U. S. Atty., for appellee.

Before SOBELOFF and CRAVEN, Circuit Judges, and SIMONS, District Judge.

CRAVEN, Circuit Judge:

We think the facts found by the Hearing Examiner, and adopted by the Appeals Council, do not support the decision that claimant Gladys L. Carico is not entitled to disability insurance benefits or to a period of disability under Sections 216(i) and 223(a) of the Social Security Act, as amended.[1] The judgment of the district court upholding the administrative decision is reversed.

Mrs. Carico is a short, fat, semiliterate housewife. Her ideal weight is 120 pounds, and she has at various times weighed as much as 200 pounds. She is now fifty-seven years old and completed the fifth grade in school. Dr. U. S. Gonzalez and Dr. E. J. Banks summarized her physical and mental condition as follows: (1) umbilical hernia; (2) chronic posterior urethritis; (3) chronic uterine cervicitis; (4) probable rheumatoid arthritis, quiescent stage.; (5) osteoarthritis, minimal (synovitis, left knee); (6) varicose veins, bilaterally; (7) exogenous obesity; and (8) psychoneurosis. Mrs. Carico has also complained of stomach adhesions, appendicitis, and a tumor on her kidney for which she has had many tests and returns every two months for dilation of her bladder. As stated by Dr. Gonzalez, she complains "of a multitude of trouble which in short involves from the top of her head down to her feet."

Mrs. Carico has held only one job: from 1944 to 1958 she worked as a checker in a dry cleaning plant in Coeburn, Virginia. Her duties required her to stand on her feet all of the time. In order to have an operation for varicose veins on her legs, she quit her job, was replaced by someone else, drew unemployment compensation for sixteen weeks, and thereafter attempted unsuccessfully to get employment at various stores and places in Coeburn, Virginia.

Claimant has an I.Q. of 74 and is in the mild mental defective range of intelligence. Dr. Pierce D. Nelson summarized her mental and nervous condition as follows:

"I think the patient's diagnosis is best described as a longstanding psychoneurotic disorder of a mixed type with somatic conversion symptoms, depression and hysterical symptoms. The problem of her emotional illness probably started many years ago and her home adjustment was made considerably worse with the onset of her first marriage and difficult adjustment there.[2] I think that continuing difficulty occurred as she adjusted to her work problems and the onset of female trouble, thrombosis of both legs, problems of hernia, etc., all added to her problems of adjustment. I think the patient has functioned in a rather low level of intellectual function most of her life and I think this has also contributed to her problems of adjustment at the present time and her inability to carry on in a reasonable manner.

"I think the patient is functioning in the moderate range of psychiatric disability. I think that any one of a number of factors could be stressful enough to increase her disability in a substantial manner. I think that medical and psychiatric treatment would make her feel more comfortable at home and I doubt that either treatment or rehabilitation would improve her overall level of function from its

---

1. 42 U.S.C.A. §§ 416(i), 423(a).

2. Her first husband committed suicide.

present level. I think she is probably at the optimum level of function at the present time and would expect very little change in her in the next several months and years to come although she probably will go down hill in this period of time.

"I think the patient should be considered competent to manage any financial assistance that might be offered to her as a result of this examination."

Although the Hearing Examiner noted the testimony of Dr. Nelson, he concluded that with "proper motivation and a desire to do remunerative work, [the claimant] would still be able to work as a checker in a laundry and could do many other types of light, sedentary work such as would be involved in the manufacture of plastic products or in the light metal industry without aggravating any conditions." We think the Hearing Examiner failed to appreciate the true significance of claimant's lack of motivation.

Insufficient or improper motivation may be symptomatic of illness, or it may, perhaps, indicate lack of character. The Hearing Examiner apparently assumed the latter in complete disregard of the psychiatrist's report. He made the implicit assumption, for which there is no support, that Mrs. Carico could be properly motivated if she only wished to be. We do not think questions of motivation can be so simply regarded. In assuming that she had a bad attitude, the Hearing Examiner utterly disregarded her testimony that she has tried to find a job she could do (other than one requiring her to stand on her feet all day).

█ We think the medical evidence clearly shows, considering the record as a whole, that claimant is physically unable to do manual labor or labor requiring her to stand on her feet,[3] and that due to her mental inability and lack of education and lack of training she is unemployable within the Appalachian area where she resides.

██ Since she could not continue to perform in her previous occupation, the burden shifted to the Social Security Administration to show that there are other kinds of work *actually* available for which a fifty-seven-year old woman with claimant's impairments may be considered reasonably suited. Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967). Nothing in the record indicates that the Secretary seriously attempted to sustain this burden. Certainly it is not sufficient that a Hearing Examiner suggest that theoretically she "could do many other types of light, sedentary work" such as would be involved in the plastic products or light metal industry. Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967).

█ The Hearing Examiner also suggested that claimant might be able to get employment in motels or hotels in keeping the rooms cleaned and supplying towels and bed linens. But this sort of manual labor would require not only standing up all day but more physical effort than her prior employment. Compared to checker in a dry cleaning plant, the suggested "light" work would be harder rather than easier.

█ On the record as a whole, we think the district court was clearly in error in holding that there was substantial evidence to sustain the decision of the Secretary. The case will be remanded to the district court for entry of judgment for claimant.

Reversed and remanded.

---

3. Her legs are in such condition that she normally bandages them even at home.