David E. **HICKS**

v.

John W. **GARDNER,** Secretary of Health, Education and Welfare.

No. 65–C–74–A.

United States District Court W. D. Virginia, Abingdon Division.

June 12, 1967.

George B. Cooley, Hillsville, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

MICHIE, District Judge.

Pursuant to 42 U.S.C. § 405(g), this 53 year old social security claimant who is married and has six dependent children is before the court for a second time urging reversal of a decision of the Secretary of Health, Education and Welfare denying him disability benefits and a period of disability.

On June 5, 1964 David E. Hicks, the claimant applied for disability benefits alleging that, due to silicosis and complications from an old back injury, he became unable to work on December 5, 1963. Following an initial denial of benefits, claimant requested reconsideration which in turn was also denied. A hearing, held at claimant's request, yielded another decision unfavorable to him which, on July 23, 1965, was affirmed by the Appeals Council. Claimant then petitioned for review in this court and, upon his suggestion that the evidence in the record was incomplete, he was granted a remand to the Secretary for further administrative action. A second hearing was held on August 2, 1966 which also resulted in a decision unfavorable to the claimant. This determination was affirmed by the Appeals Council on October 11, 1966. From this final decision, claimant again petitioned the court seeking reversal.

Since claimant will meet the special insurance requirements through the quarter ending December 31, 1968, any evidence of disability up to the date of the Secretary's final decision must be considered. Thus viewing the evidence, I find that the decision of the Secretary is supported by substantial evidence and, therefore, I affirm.

Although the Secretary found the claimant not to be totally disabled, he did find that the combination of silicosis and residuals from the old back injury precluded claimant's returning to his former occupation of mining and would confine his labor entirely to those employments of a dust-free, light and sedentary nature. The record read as a whole yields substantial evidence in support of these findings and precludes my overturning them. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Claimant's testimony, his age and work experience all point to this result. Particularly confirming, however, are the medical evidence and the medical opinions.

On June 14, 1966 claimant was examined by Dr. Charles Bray, an orthopedist, at the request of the Social Security Administration. Dr. Bray directed most of his attention to the back injuries which claimant has insisted are the primary cause of his asserted disability. Although there was no obvious deformity about his back, Dr. Bray found that there was considerable loss of motion in the lumbarsacral spine. The patient, upon bending, could reach no closer than 12 inches to the floor and his side flexion, which seemed to bother him more than forward flexion, was limited by 50%. Although the claimant appeared to have normal motor and sensory status in both the lower as well as the upper extremities, his gait was not that of the normal person. X-ray studies made during the examination revealed considerable fusion of the L–3, L–4 and L–5 spinal segments as well as other deformities affecting these vertebrae.

The doctor felt that, although claimant should have no problem as far as walking is concerned, he would expect trouble from bending, stooping and standing for long periods of time. Also, he could not be expected to lift more than 35 to 50 pounds without experiencing pain. Upon the basis of this examination, Dr. Bray concluded:

> In my opinion this patient could be employed in some light work but not a job requiring excessive physical exertion.

Turning now to disability associated with claimant's lung disease, the finding of partial disability is again supported by the evidence. Claimant was examined on August 9, 1965 by Dr. James Chitwood. Dr. Chitwood found nothing unusual on examination of the chest on ausculation and percussion. Expansion of the chest, by the doctor's examination, appeared to be normal and, of interest, the vital capacity which is one measurement of lung function was found to be 100% of normal.

Claimant was later referred by his attorney to Dr. Arthur W. Haelig, a physician associated with the Appalachian Regional Hospitals which specialize in the treatment of lung disorders. A test run by Dr. D. L. Rasmussen upon the claimant while he was at the hospital determined that his vital capacity in terms of his ability to ventilate his lungs demonstrated a voluntary ventilation of 149 liters per minute as compared to a predicted normal of 156, a very slight reduction. But the severity of lung damage is not, in every case, correctly ascertained by this test alone. A so-called blood gas test was also run. This test, in which the oxygen content of claimant's blood was tested both before and after exertion and compared with a norm, disclosed significant deficiency in claimant's ability to diffuse oxygen into his blood. Of an expected maximum oxygen intake of 2.5 liters per minute, claimant demonstrated only 1.8 to 1.9 which led the physician to comment that:

> This man has lost approximately 55% of his expected aerobic work capacity.

He could not be expected to perform steady work beyond levels requiring an oxygen consumption of 0.6–0.65 liters per minute (light to fairly moderate work). * * * He shows excess ventilation with exercise and a markedly abnormal physiologic dead space. These features are consistent with his occupational lung disease.

In an examination undertaken at the request of the Social Security Administration on May 27, 1966, Dr. Snowden C. Hall undertook to evaluate the combined disabling effect of claimant's back and lung conditions. Basing his diagnosis on a general physical examination of claimant as well as tests which had been run on claimant's back and lung function by two other doctors, revealing substantially the same condition as recited above, Dr. Hall concluded that:

> This man has chronic pulmonary disease, in all probability due to silicosis. He should never again be exposed for any length of time to dust, especially silica. He is able to walk, climb stairs and lift twenty pounds, in a reasonable manner. Bending and stooping excessively will probably cause him discomfort because of his back condition, not because of his lungs * * *. There is no reason to believe that treatment will cause any improvement in his condition. From the standpoint of his pulmonary disease he would be classified as Class II, permitting light to moderate exercise on a sustained basis.
>
> * * * * * *
>
> The claimant has extensive x-ray changes from the old injury to his lower back. His forward bending is only slightly restricted but heavy weight lifting should be contra-indicated. He complains of pain when he stoops, and bends, and lifts. * * * In my opinion the condition of his back should restrict him to sedentary or light work only.

▪ Thus reviewed, the medical evidence and the medical opinions fairly support the finding of the Secretary that claimant is not precluded from engaging

in work of a light and sedentary nature. The hearing examiner had to consider but was not bound by the finding of the Virginia Workmen's Compensation Commission that claimant was totally disabled due to silicosis, and, of course, was entitled to take into consideration claimant's physical appearance and demeanor as observed by him. Claimant's appearance of physical comfort at the hearing, his ability to drive an automobile as well as his testimony that he could walk slowly for perhaps a half mile on level ground point to the correctness of the Secretary's determination.

■ In evaluating the effects of various physical maladies upon the claimant's general well being, the Secretary may not fragmentize them, but must treat them in combination. Underwood v. Ribicoff, 298 F.2d 830 (4th Cir. 1962). The record indicates that the Secretary did, indeed, evaluate the combined effects of claimant's back and lung condition as they affect the total man. Separate consideration might have led to a conclusion that claimant could do light to moderate work. Instead the Secretary found the claimant capable of only light, sedentary work. This finding of the Secretary, therefore, was properly arrived at and finds substantial support in the evidence.

■ In a claim for disability benefits, the onus is upon the claimant to demonstrate that the disabilities under which he labors preclude his engaging in any substantial gainful activity. However, once he has come forward with evidence sufficient to demonstrate that he is partially disabled and can no longer return to his former employment, the burden shifts to the Secretary to demonstrate that there are jobs available in the local economy which the claimant in view of his age, past work experience and physical disability is capable of performing. Boyd v. Gardner, No. 11,014, 377 F.2d 718 (4th Cir., April 4, 1967); Davidson v. Gardner, 370 F.2d 803 (6th Cir. 1966).

Claimant was born in Yukon, West Virginia, January 9, 1914. He completed the eighth grade in school and quite some time thereafter, in 1962, passed an examination to receive a high school qualifying certificate. The remainder of his formal education consisted of night courses undertaken in order to qualify for a supervisory position in the coal mines.

In 1929, at the age of 15, he commenced working in the coal mines. In March of 1932 he received a severe back injury in a slate fall and was not employed again until 1937 or early 1938. From that date until 1963 when he was laid off during a general work force reduction, he worked almost solely in the mines. Due to his motivation and better than average intelligence, he was able to secure the jobs which were potentially more dangerous and carried greater responsibility but which required less physical strain. After having taken courses in mine ventilation, gases and safety, in 1949 he qualified as a mine foreman, fire boss and section boss. In the ensuing years preceding his layoff in 1963, he often occupied a supervisory position where he was responsible for the safety and the output of several other men.

To meet the burden of establishing that there are jobs present in the local economy available to the claimant, the testimony of Dr. Carroll Smith, a specialist in vocational counseling and Chairman of the Department of Psychology at Radford College, was introduced. There is no issue in this case as to the distance which claimant may reasonably be expected to travel in search of a job which he can perform. Numerous jobs were cited by Dr. Smith located no more than 40 to 50 miles from the claimant's home at Hillsville, well within the "relevant geographic area" bounded by this claimant's original and residual capacities and in which he might reasonably be expected to market his labor. Hilton v. Celebrezze, 367 F.2d 481 (4th Cir. 1966). The sole issue present is whether the testimony of Dr. Smith, viewed in the light of recent decisions by the Court of Appeals of this Circuit, is

sufficient to support a finding that substantially gainful alternate activity is available to the claimant in his disabled condition.

Dr. Smith observed claimant at the hearing and heard him testify. Prior to attending, he had examined the entire record of the case. Based upon his observation and study, he considered that the claimant was of high average intellectual ability, had a good understanding of machinery, and had the ability to utilize abstract concepts. He also testified that the claimant, in spite of his back injury and lung disease, would retain the motor coordination and the manual dexterity which he had acquired over the years. Considering claimant's ability to read and write and to use mathematics, he also found that claimant was capable of some clerical work. Although he concluded that claimant's knowledge of mining itself would afford him no transferable skills, the tools which he had utilized and developed in order to carry out his supervisory positions as well as his advanced education gave him a high employability potential.

Asked if he had an opinion whether there existed jobs in the local economy which claimant was capable of performing, Dr. Smith, after taking into account the impairment to claimant's left hand and the need for a dust-free atmosphere, answered in the affirmative and listed at least 14 such jobs, all of which involved light or light sedentary work. Confining the present inquiry to those jobs located within a 40 to 50 mile radius of claimant's home, listed was the job of taxi dispatcher in Hillsville in which, to the personal knowledge of Dr. Smith, an opening had existed a week before the hearing. Also, Dr. Smith testified, the George Wythe Hotel in Wytheville had, at the time, a job open for a night clerk. Dr. Smith had recently spoken with the personnel manager of the Burlington Company in Radford and had ascertained that the job of harness builder was available and that this job was one usually reserved for a partially disabled person. He then cited the job of driving a delivery truck for a dry cleaning company located in Wytheville. Also located in Wytheville was the job of duplicating machine operator with the American Screw Company. According to Dr. Smith, as the personnel manager at the American Screw Company is himself a handicapped person, he has stated that he will give preference to an impaired worker when it is possible to do so. Lastly, the job of tool crib attendant was, to the personal knowledge of Dr. Smith, available at the Hercules Powder Company in Radford. Furthermore, according to Dr. Smith, none of the employers he had listed indicated that they would decline employment to a person of claimant's age and physical impairments.

In Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967), the Court of Appeals, while condemning "armchair speculation" by vocational experts, required the Secretary to demonstrate that jobs are in fact available to a person of claimant's impairments. It said at p. 610:

> While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job availability for persons of his limited capacity. [Emphasis in original.]

In three recent cases—Carico v. Gardner, 377 F.2d 259 (4th Cir., April 17, 1967); Hayes v. Gardner, 376 F.2d 517 (4th Cir., April 6, 1967); Boyd v. Gardner, No. 11,014, 377 F.2d 718 (4th Cir., April 4, 1967)—the Fourth Circuit again confronted the issue of the degree of evidence necessary to support a finding of job availability. With repeated insistence that the disability benefits portion of the Social Security Act is not an unemployment compensation statute, the court continues to advert to the difficulties encountered by a handicapped person in a labor market where there is an excess of able-bodied men. *Boyd,* supra. Whereas, in Gardner v. Earnest, the court emphasized that the Secretary is under no duty to lead the claimant to a specific job and required only a factual showing of job availability, in *Carico*

the court went so far as to say at p. 261 of 377 F.2d:

> Since she could not continue to perform in her previous occupation, the burden shifted to the Social Security Administration to show that there are other kinds of work *actually* available for which a fifty-seven-year old woman with claimant's impairments may be considered reasonably suited. [Emphasis in original.]

█ In view of the fact that the Court of Appeals continues to admonish that the standard it establishes is only a practical one and taking the decisions in the light of their condemnation of theoretical speculation from directories such as the Dictionary of Occupational Titles, I conclude that to meet his burden under the statute the Secretary does not have to have at hand an employer who will testify that he will give the claimant a job but rather that the statute is satisfied by testimony of a vocational expert who, like Dr. Smith in this case, had undertaken a field investigation, spoken to prospective employers and ascertained that they would hire a man in claimant's condition.

██ The claimant, of course, may introduce evidence to the contrary and in this case has done so. Claimant testified that he had submitted applications for employment to several concerns affording the same type of light sedentary work considered by the vocational expert. In spite of his applications, claimant was never contacted by any of the employers with respect to a job. While this is some evidence that jobs are not available to a man in claimant's condition, it is by no means conclusive since the failure to employ claimant could have been for reasons other than his age and disabled condition. The evidence of the vocational consultant testifying from personal knowledge that the jobs are there which claimant can perform is sufficient to allow the reasoning mind to conclude that claimant is employable and, therefore, constitutes substantial evidence in support of the Secretary's determination. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

█ Claimant poses another question with respect to job availability which merits consideration. He argues that the jobs of taxi dispatcher and hotel clerk cited by the vocational consultant may not support a finding of job availability since they do not provide a living wage. The duty, he says, is upon the Secretary to demonstrate that the claimant may be gainfully employed and that these jobs, since they do not provide a living wage, cannot be considered substantial gainful employment. I agree that all jobs do not provide substantial gainful employment. See Leftwich v. Gardner, 377 F.2d 287 (4th Cir., May 1, 1967); Hanes v. Celebrezze, 337 F.2d 409 (4th Cir. 1964). To be kept in mind is the purpose of the Act which is to compensate a person when physical impairments prevent his competitively entering the labor market. In such a case where claimant's disabilities relegate him to a job which pays less than subsistence wages, certainly he is not able to offer his labor on a par with others. If the claimant wishing to contest the substantial gainfulness of an occupation cited by the Secretary introduces credible evidence in contradiction, the Secretary should then be made to shoulder the burden of showing that the job affords substantial gainful employment. In this case, however, the question raised is not determinative. Even allowing that the two jobs in dispute were found not to constitute substantial gainful employment, the decision of the Secretary will stand as he has established the existence of several other jobs present in the local economy which would unquestionably afford the claimant a living wage.

For the foregoing reasons, it is concluded that the decision of the Secretary of Health, Education and Welfare is supported by substantial evidence, and, therefore, it is ordered that the decision appealed from be, and hereby is, affirmed.