**William O. JOHNSON, Plaintiff,**

**v.**

**Wilbur J. COHEN, Secretary, Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–1–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Oct. 9, 1968.

Glen M. Williams, Jonesville, Va., for plaintiff.

James P. Brice, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

William O. Johnson, claimant, has filed a petition requesting this court pursuant to 42 U.S.C.A. § 405(g) to review the final decision of the Secretary of Health, Education and Welfare rendered by the Appeals Council on November 30, 1967. The Secretary's decision was adverse to claimant's request for (1) disability insurance benefits as provided for in the Social Security Act § 223, 42 U.S.C.A. § 423 as amended, and for (2) the establishment of a period of disability as provided for in the Social Security Act § 216(i), 42 U.S.C.A. § 416(i) as amended.

■ It was necessary for claimant to show by a preponderance of the evidence that he was under a "disability" as defined in the applicable sections of the Social Security Act. A "disability" is defined in the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 416(i) (1) (A),

as amended; 42 U.S.C.A. § 423(c) (2) (A), as amended.

The Secretary held that claimant did not prove that he was suffering from such a "disability" on or before the date of the final decision, November 30, 1967.

■ The only issue presently before this court is whether there is "substantial evidence" in the record to support the Secretary's finding. 42 U.S.C.A. § 405 (g). If the court finds such "substantial evidence" to support the Secretary's final decision, any further inquiry must cease and the Secretary's decision will be sustained. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). Inversely, if the court does not conclude that there is "substantial evidence" for the Secretary's decision, summary judgment will be entered for the claimant.

As of the time of the Secretary's final decision, claimant lived in Jonesville, Virginia, which is located in the Appalachian region of Southwest Virginia. He was 42 years old, married and had one child under eighteen years of age. Claimant is five feet, eleven inches tall and weighs approximately 170 pounds, his normal weight for the last five or six years. He completed a sixth grade education and began working in the coal mines when he was 17 or 18 years old. Since that time he has worked continuously for 23 years at various jobs in coal mines, but has never worked at any other vocation. Claimant stopped work on January 14, 1966, on the advice of his personal physician, Dr. Hines, and has not worked since.

Dr. Hines has been claimant's personal physician since 1955 and has examined claimant on several occasions. Dr. Hines reports that claimant suffered rheumatic fever between 12 and 15 years of age; that claimant has complained of low back pain since 1955; that he often experiences stiffness and soreness in the joints of his fingers, elbows, shoulders, knees and ankles; that he becomes weak and short of breath; that he sometimes sees double and even loses his vision for brief periods; that during the last five years, he has suffered deep chest pain radiating

into his shoulders and arms; and that claimant's condition has become worse since January 1966. Dr. Hines diagnosed claimant's condition as follows:

1. rheumatic heart disease
2. mitral regurgitation
3. aortic stenosis
4. first degree A.V. block
5. functional class III, therapeutic class D
6. arthritis
7. psychoneurosis
8. angina pectoris
9. impotence
10. arteriosclerosis (abdominal muscle)

Dr. Hines' opinion that claimant is functional class III and therapeutic class D means that claimant can do only the lightest physical activities. Dr. Hines stated in his report on October 10, 1966, that claimant's condition caused him to stop work on January 15, 1966. He further stated in his report of May 20, 1966, that claimant was "still unable to work and it is doubtful if he will ever be at his kind of work." Record at 154.

Claimant was also examined at various times by four other physicians, Dr. Wilson, Dr. Espejo, Dr. Gonzalez, and Dr. Hogan, Jr., all of whose reports have been submitted as evidence.

Dr. Wilson, an orthopedic surgeon examined claimant on June 23, 1966, and diagnosed the source of his back pain as arthritis of the low back. The examination revealed some stiffness of the back, some spasm of the back muscles and tenderness over the low back and along the muscles. When claimant stooped over he bent from the hips rather than bending his back. However, claimant was reported to have full range of motion in all the joints of his legs, arms and shoulders. Dr. Wilson reported that on December 12, 1963, claimant was admitted to the Harlem Hospital due to complaints of back pain which had begun approximately one week previously and which had become so severe as to force his admission to the hospital. At that time claimant informed his examining physician that his back had been the source of intermittent trouble for the previous ten years. Claimant was again admitted to the same hospital on November 24, 1965, with complaints of chest and back pain. He had also been seen as an outpatient two or three times for his complaint of back pain in the time interval between the hospital admissions. X-rays were taken at the request of Dr. Wilson, revealing hypertrophic spurring and some sclerosis of the adjacent margins of vertebrae L–4 and L–5. The impression of the x-ray given by Dr. Simmons, a radiologist, was narrowing at the L–4, L–5 level, probably due to degenerative disc disease with some associated hypertrophic bone changes and arteriosclerosis.

The primary purpose of claimant's second hospital admission on November 24, 1965, was for a thorough clinical work-up. Claimant remained in the hospital until December 3, 1965. The medical examinations and laboratory tests given at that time revealed that application of pressure over T–1 apparently precipitated pain that radiated between his shoulder blades to his chest; a short systolic coarse grade-II heart murmur; a first degree heart block and possible myocardial infarction; minimal pneumonitis of one of the lungs; minimal spurring on the lower back bone at vertebrae L–4 and L–5; and arteriosclerosis in the abdominal region. The final diagnosis was lumbar arthritis; rheumatic heart disease, mitral stenosis and aortic stenosis—class 1–A, and impotence.

Dr. Espejo, a specialist in cardiovascular disease examined claimant and reported his impression as 1. rheumatic heart disease, inactive 2. mitral regurgitation, mild, probably 3. aortic stenosis, mild 4. first degree A–V block 5. functional class I, therapeutic class A 6. neuro circulatory asthenia 7. psychoneurosis.

Dr. Gonzales also gave claimant a cardiovascular work-up and arrived at substantially the same medical conclusions as Dr. Espejo, diagnosing claimant's condition as rheumatic heart disease with mi-

tral insufficiency and a first degree heart block, a suspected degenerative disk and a state of anxiety. Dr. Gonzalez gave claimant an electrocardiogram examination which revealed a heart block and an intraventricular conduction defect, but the electrocardiogram showed no appreciable change after claimant completed a prescribed exercise.

Dr. Hogan, Jr., a psychiatrist, also examined claimant. Dr. Hogan began his report by saying, "I would like to stress that I felt he [claimant] in no way consciously made any effort to overstate his case." Record at 187. Dr. Hogan reported that claimant "is of average intelligence and good judgment * * *. There are neither illusions, delusions, nor hallucinations." Dr. Hogan concluded that claimant had a "psychosomatic overlay" meaning that claimant's organic and musculo-skeletal complaints were in part aggravated by a psychophysiological reaction. However, Dr. Hogan says:

I would like to stress again that the patient does not give any evidence at all of malingering or dramatizing his case. That he does dramatize it and that he comes back to his musculo-skeletal and cardiovascular ailments no matter how you lead him away from them * * * [however this is done] without his realizing he has done so. Record at 88.

A hearing was held on claimant's application by a hearing examiner of the Department of Health, Education and Welfare on April 27, 1967. Claimant testified at the hearing that he stopped work on January 14, 1966, because of his illness, being advised to do so by his doctor. He also testified that his back has caused him pain since the 1950's but has gotten worse in the last few years and now causes him continual pain in the lower part of his spine, radiating down into his legs, and that the pain is so bad that he takes pain killing drugs. Claimant testified that the pain prevented his sitting in one position for any extended time and that he has to change his position often, standing and walking at intervals. Claimant further testified that he has

severe pains in his chest, is short of breath after minor exercise, has dizzy spells and sees double, sometimes losing his vision completely. Claimant testified that his condition is such that he has tried, but is unable to mow his lawn, and the minor exertion of carrying a bucket of coal across the room leaves him exhausted.

Claimant's wife testified that her husband has suffered pain in his chest and back for years but that his condition has gotten much worse lately. She stated that he has been in such bad condition at times that he has been unable to go to the doctor and that he is unable to work even to the extent of hanging a curtain rod. She further testified that claimant cannot remain seated for a long period of time because of his back.

Dr. Charles F. Elton, a vocational expert, also testified at the hearing upon request of the Secretary of Health, Education and Welfare. Dr. Elton testified that on the basis of the medical reports of Doctors Gross, Espejo, Wilson, Gonzalez and Hogan but excluding the report of Dr. Hines, claimant's personal physician, his opinion would be that claimant would be unable to return to his former occupation of working in the mines, but would not be disabled to find some gainful employment in the economy. Dr. Elton gave no weight to the testimony of claimant and his wife in giving this opinion. Dr. Elton testified that if Dr. Hines' medical report were accepted as valid, claimant should be considered completely disabled. Dr. Elton, disregarding the evidence of Dr. Hines' report and claimant's testimony, testified that he felt claimant could work in at least three possible jobs, a machine sander, an automatic saw operator, or a forklift driver. He testified that all these jobs were available in the area of Middlesboro, Kentucky, where the hearing was being held.

Mr. Ronnie Montgomery, an expert witness of claimant, thereafter testified that he had accompanied claimant to approximately six different firms in the Middlesboro area, including firms con-

taining the three jobs mentioned by the vocation expert, to determine if any jobs were available to claimant in the area. Mr. Montgomery testified that he allowed claimant to tell the prospective employers of his physical condition at each place and then inquired to see if a job was available. The expert witness testified that no jobs were then available, and it was his opinion that claimant would be unable to procure employment in that area within a reasonable time, because of his physical condition and the economic conditions prevailing in the area.

Dr. Elton, the vocational expert, suggested three jobs available in the area not too strenuous for claimant's condition. 1. He recommended the job of buffing machine operator in the Middlesboro Tannery Company. This job entails lifting approximately a five to ten pound quantity of leather approximately eighty times a day onto the buffing machine and buffing it. Mr. Montgomery testified that he and claimant went to the Middlesboro Tannery Company to inquire about the buffing job. They were informed that the tannery was unionized; that when job vacancies become available they are always offered to the union members before being given to a new employee; that the job of operating a buffing machine is a desirable job for a union employee; and that whenever such a buffing machine vacancy occurs it is always requested by employee union members; therefore, the buffing machine job is never available to new employees. 2. Dr. Elton also recommended the jobs of machine sender or cutting saw operator at the Tennessee Flake Wood Processing Company. However, Mr. Montgomery reports that the wood processing company advised him that claimant's job application would be welcome but that no action would be taken to process such an application for nine to twelve months due to a surplus of laborers. The company further advised claimant and Mr. Montgomery that the company would require a medical examination of claimant; whereupon, the company doctor would decide whether claimant should be employed. Mr. Montgomery stated that

the Tennessee Flake hired only about three men per one hundred applications and gave his opinion that claimant would have little opportunity to be employed, even nine months later because of his physical condition, age and education. 3. The third job suggested by Dr. Elton was operating a forklift. Mr. Montgomery testified that he and claimant checked with a concern that used a forklift but found that all the employees drove the forklift, each of them doing other more strenuous jobs also. The employee nearest to the forklift drove it when necessary.

The hearing examiner decided that claimant suffers from rheumatic heart disease—Class 1–A, minimal arthritis of the lumbar spine, and anxiety state; that these impairments would not interfere with the performance of any type of activity; and that, therefore, claimant is not disabled from returning to his past job of working in the coal mines. This finding was accepted by the Secretary as the final decision in claimant's case.

■ The court cannot find any "substantial evidence" to support the Secretary's decision. The hearing examiner found that claimant is able to return to his past vocation of loading coal in the mines, yet the Secretary's own vocational expert, Dr. Elton, on the basis of only the medical evidence most adverse to claimant testified that claimant was disabled to return to work in the coal mines. On the basis of Dr. Hines' medical opinion, the only doctor who had treated claimant for many years, Dr. Elton testified that claimant is completely disabled. Dr. Hogan, the psychiatrist who examined claimant, reported that claimant "in no way consciously made any effort to overstate his case * * *. [and] does not give any evidence at all of malingering or dramatizing his case." Record at 167 and 188. Yet neither the hearing examiner nor the vocational expert gave any credibility whatsoever to the testimony of claimant and his wife, although both testified that claimant is in constant pain from his back, being unable to maintain

any position for more than a short period of time, and becomes tired and short of breath after even minor exertion. As recognized in Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964) a physical phenomena of debilitating nature may work in differing degrees of hardship on different persons. Furthermore, different individuals have different threshholds of resistance to the pain caused by similar maladies. The hearing examiner also apparently completely disregarded the medical opinion of Dr. Hines who reported that claimant was completely disabled from work and that it is doubtful if he can ever return to his kind of work. The court is at a loss to find any evidence supporting the finding that claimant is able to return to his previous occupation of working in the mines, bearing in mind that loading coal is one of the most strenuous occupations available—even for a man much younger than claimant's forty-two years.

■■ Having decided that claimant is unable to return to his past occupation, the burden is on the Secretary to prove that claimant has residual skills and abilities sufficient to procure gainful employment in his geographical area. Gardner v. Earnest, 371 F.2d 606 (4th Cir. 1967); Hall v. Celebrezze, 347 F.2d 937 (4th Cir. 1965). The Secretary's vocational expert recited three or four jobs in the geographical area available to claimant, but claimant accompanied by Mr. Montgomery investigated all the jobs recited and none were available. Claimant and Mr. Montgomery also investigated several other companies in an effort to procure employment for claimant, but all efforts were unsuccessful. The Secretary has not shown the availability of any jobs in claimant's area for which he is physically capable.

Upon mature consideration of the evidence in this case the court finds that the Secretary's final decision is not supported by "substantial evidence" and that claimant is entitled to the benefits under §§ 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423, as amended; therefore, it is

Adjudged and ordered that the Secretary's decision be overruled and that summary judgment be entered in favor for claimant, William O. Johnson.