**Rufus B. SILCOX, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 70–C–60–A.**

United States District Court, W. D. Virginia, Abingdon Division.

Aug. 16, 1971.

5. *Id.*

6. 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969).

7. *Id.* at 1113.

William J. Sturgill, Greear, Bowen, Mullins & Winston, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

### OPINION AND JUDGMENT

DALTON, District Judge.

Rufus B. Silcox brings this action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to obtain review of a decision of the Secretary of Health, Education and Welfare, which held that the claimant was not entitled to the establishment of a period of disability nor disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C.A. § 416(i) and 423. The decision rendered by the hearing examiner on December 5, 1969, became the final decision of the Secretary when the Appeals Council denied the claimant's request for review on March 25, 1970.

The Court's sole purpose in this review is to determine whether there is substantial evidence in the proceedings to support the Secretary's decision. If this Court finds such substantial evidence, our inquiry must cease, and the Secretary's decision will be conclusive, Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962).

The pertinent facts are these. Claimant was born May 3, 1917. He is presently married to his second wife and lives with her and their two minor children in Star Route, Dante, Virginia. Mr. Silcox possesses a fourth grade education, and has no vocational training. He worked off and on in the coal mines for over 20 years before he quit the mines and thereafter secured a job driving a truck for a building construction company and performing other chores as a handyman. His duties required a considerable amount of heavy lifting and repetitive use of his back. After more than a year of this work, Mr. Silcox quit in May, 1967, and found employment with another company where he worked several months, digging ditches with pick and shovel to lay pipe, a job he left because "the work was too hard". Mr. Silcox has not worked since that time.

In his application for a period of disability and for disability insurance benefits, filed September 5, 1968, Mr. Silcox alleged disability from May 5, 1967, because of "emphysema, nerves, back trouble, and arthritis". Initially and upon reconsideration, the application was denied. Pursuant to his request, a hearing was duly held October 21, 1969, where claimant, represented by counsel, appeared and testified. Similarly, Leafy Silcox, claimant's wife, Ruby Sutherland, his sister, and Jessee Counts, a friend and former neighbor appeared and testified. In addition to the medical evidence presented at the hearing, the examiner in reaching his decision had the benefit of at least one medical report obtained subsequent to the hearing. On December 5, 1968, the hearing examiner held that considering the entire evidence of record Mr. Silcox had failed to show by competent medical evidence that he was suffering from an impairment, or impairments, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application was effective. Because the claimant meets the special earnings requirements at least through June 30, 1972, the decision is necessarily limited to the date it was rendered as to a finding of disability or non-disability.

The medical evidence in the record is voluminous, containing reports covering a period greater than six years from 1963 to 1969. The earliest medical evidence is the report of Dr. N. C. Ratliffe. The report indicated treatment of Mr. Silcox on December 20, 1963 for complaints of chest pains initiated by shoveling coal. X-rays were negative for rib fracture. Claimant was treated and returned to work January 6, 1964, with a diagnosis of strain of the intercostal muscle of the right chest. The doctor further reported that he did not know claimant's condition as of September 12, 1968 when the report was furnished to the Social Security Administration.

A report from the Johnston Memorial Clinic, Abingdon, Virginia, indicated that claimant was hospitalized from July 22, 1965 to August 2, 1965, upon complaints of being sick and vomiting for four days. On admission it was recited that claimant was well-developed, well-nourished and in no acute or chronic distress; moreover Mr. Silcox was observed as being alert, rational, and cooperative and ambulatory with a normal gait. The physical examination was largely normal, with no significant abnormal physical findings. X-rays however revealed changes consistent with old inactive tubercular lesions. By certain indications Mr. Silcox was considered for possible Addison's disease, but after an initially slow start, he apparently responded to medication. Claimant was advised not to return to work prior to August 9, 1965. The hospital's diagnosis concluded: (1) anxiety-depression, mild; (2) pulmonary emphysema, mild;

(3) tuberculosis, both apices, old inactive; (4) osteoarthritis of the spine mild. In a postscript dated September 11, 1968, Dr. G. J. Barrow, the discharging physician, reported that he had not seen claimant since that time. Dr. W. A. Davis, a general practitioner, who has seen the claimant on several occasions advised that he first saw the claimant in October, 1965, for complaint of neck pains lasting one day. Examination suggested degenerative disc pathology. Dr. Davis next saw claimant in April, 1966, for shortness of breath; other than discussing with Mr. Silcox referral for pulmonary evaluation, nothing was done. Dr. Davis recited that claimant was hospitalized in June, 1966, at the Bristol Memorial Hospital under Dr. Cowan for shortness of breath. Special breathing studies by Dr. Schmidt were found to be within normal limits. Dr. Cowan opined a severe emotional overlay and recommended psychiatric help. Information about the admission was not obtained by claimant.

Claimant visited Dr. Davis on September 16, 1968 to secure a report for social security purposes and complained of back pain, shortness of breath and nervousness. However, upon examination, the only significant abnormal finding was a slightly enlarged prostate gland. In a letter to claimant's attorney dated August 6, 1969 Dr. Davis advised that claimant had complained that day of pain in the neck, shoulder and lower back, the treatment for which included injections. The doctor determined claimant had symptoms of osteoarthritis and fibromyositis, and his nervousness was considered "also disabling". He subsequently averred that he had seen claimant July 26 rather than August 6. Finally, Dr. Davis noted that he treated claimant five times from August to October, 1969, for complaints of liquid around the lungs, and neck, shoulder, and chest pains for which he was given injections. Claimant at that time requested hospitalization for surgery on his nose, but was advised by Dr. Davis that he could be treated at home, and

that arrangements for consultation with a specialist would be made.

Dr. M. D. Hogan, a psychiatrist, evaluated the claimant on November 5, 1968, upon referral by the Virginia State Agency. Dr. Hogan found claimant's intelligence dull average or better, his judgment and memory good and his speech content relevant and coherent. He further determined that Mr. Silcox suffered from no illusions, delusions, nor hallucinations and that he was mentally competent and able to manage his own affairs. The diagnosis was anxiety reaction, chronic, moderate, with depressive traits. To more precisely clarify his physical ailments, the claimant was referred to the Clinch Valley Clinic Hospital for evaluation on November 23, 1968. Mr. Silcox complained primarily of recurrent back pains, arthritis and shortness of breath. The findings did not appear entirely contributory to claimant's many complaints, as extensive studies revealed no serious clinical abnormalities. Dr. Abernathy, the attending physician and a specialist in internal medicine, noted that special breathing studies were within normal limits, that the heart was of normal size with no murmurs or palpitations, and that x-rays taken of the chest and lumbar spine revealed nothing significantly irregular. There was no swelling of the various joints and all of them went through the normal range of motion. There was however tenderness in the lumbar areas. Dr. Abernathy observed that claimant's hands were heavily callused and grease-stained, and that a recently injured thumbnail was healing. The diagnosis, similar to earlier ones, concluded: (1) chronic bronchitis; (2) healed tuberculosis, right apex; (3) probable old herniation of the nucleus pulposus; (4) chronic lumbar strain; (5) chronic anxiety.

Following the notice to claimant of the hearing, Mr. Silcox saw Dr. R. F. Baxter, a general practitioner with a subspecialty in cardiovascular diseases, to obtain a statement to introduce into evidence. Extensive studies demonstrated

moderate to severe emphysema, and the pulmonary function test showed vital capacity as 71%. In his clinical summary of October 15, 1969, Dr. Baxter reached a diagnosis more serious than his predecessors; (1) chronic respiratory insufficiency with pulmonary fibrosis and insufficiency; (2) probable disc syndrome; (3) arteriosclerotic heart disease with coronary insufficiency and posterior wall subendocardial infarction in the past; (4) chronic recurrent right subdeltoid bursitis. Dr. Baxter recommended certain certain medications and an electrocardiogram, chest x-ray, pulmonary function studies, and urinalysis.

A report made after the oral hearing, but reviewed by the Appeals Council before affirming the hearing examiner's decision is the most recent source of medical evidence. Dr. J. H. Bowden, Jr., of the Johnston Memorial Clinic made extensive tests upon the claimant and his impressions were similar to Dr. Baxter's: (1) chronic low back strain—possible intervertebral disc degeneration; (2) chronic mild sinusitis; (3) pulmonary emphysema, mild, with some chronic bronchitis; (4) suspect arteriosclerotic heart disease with angina pectoris and possible recent myocardial injury by history; (5) chronic anxiety-tension depressive state. In his report dated November 20, 1969, Dr. Bowden reported that claimant had been hospitalized from November 2, 1969 to November 18, 1969, with complaint of low back pain which claimant represented had been recurring over the previous 25 or more years. An upper G. I. series demonstrated an active duodenal ulcer.

At the hearing Mr. Silcox testified that he has almost continuous pains in his chest, back, and joints, that he cannot lift anything and that he takes injections regularly for his arthritis. He stated that he is nervous, and that he is unable to sleep at night because of the pain and frequent coughing. He can neither sit, stand or walk for any length of time nor can he ascend the flight of stairs in his home without having to stop and rest. Claimant visits his physician weekly and he reported that he takes seven different medications amounting to over 30 pills daily. Commensurate with the frequency of their observations, Mrs. Silcox, Mrs. Sutherland and Mr. Counts corroborated claimant's testimony.

Based on the medical evidence and claimant's subjective testimony the hearing examiner found that Mr. Silcox was not physically able to engage in productive work activity which requires strenuous physical exertion, heavy lifting or repetitive use of his back. The examiner however found, *inter alia*, the following:

7. The claimant's impairments are not severe enough, either singularly or in combination, to prevent substantial gainful activity comparable to his prior employment as a truck driver and as a handyman performing chores that do not require strenuous physical exertion, heavy lifting, or repetitive use of his back.

The conclusion therefore was that the claimant was not under a "disability" as defined in the Act, as amended, at any time prior to the issuance of its decision.

Conspicuous by its absence is the testimony of a vocational expert concerning the availability of jobs which the claimant can perform with consideration of his impairments, age, education and work experience or training. The tenor of the hearing examiner's decision is that since Mr. Silcox's impairments did not preclude his return to at least one of his prior occupations, a finding of availability of jobs the claimant could reasonably perform was not required. With the basis of that determination we do not agree.

■ The claimant has the burden in this proceeding of showing by objective medical evidence that he suffers from impairments of such severity that he is precluded from engaging in substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). This burden however need not be carried to a point beyond a reasonable doubt.

Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). If the claimant shows that because of his impairments he can no longer engage in his past occupation nor has experience or training for any other type of work, then he has met his burden. The Secretary must then show by substantial evidence what employment opportunities are available to a person with the limited capabilities of the claimant before the claim for disability benefits can properly be denied. Carico v. Gardner, 377 F.2d 259 (4th Cir. 1967); Johnson v. Cohen, 293 F.Supp. 365 (W.D.Va.1968); Stacy v. Richardson, 320 F.Supp. 936 (W.D.Va.1971).

Here the claimant has met his burden. The Secretary's decision does not dispute the fact that the claimant suffers, in varying degrees, from pulmonary, cardiac, arthritic, lumbo-sacral and psychiatric impairments. Nor is there any suggestion from the medical evidence that these impairments are largely remedial. The Secretary's finding that Mr. Silcox could no longer perform a job which required lifting heavy objects, strenuous activity or repetitive use of his back precluded his return to any of his former jobs. Driving the truck for the construction company also required considerable strenuous activity, and the claimant left that job for that reason. Likewise, the job as handyman, which appears to have been secondary to the driving portion of the job, also required strenuous activity. Claimant even secured a lighter job, from the standpoint of moving heavy objects, working with pick and shovel but after a few weeks found he could not continue. There is no evidence moreover that Mr. Silcox possesses any particular skill in repair work. In any case this Court will not separate these duties of a particular job which the claimant can perform from those he cannot in order to sustain the Secretary's finding that the claimant can return to that job. It is conceivable if not probable that truck driving jobs are numerous. But the question is not what jobs claimant conceivably can perform but what he reasonably can perform.

Thomas v. Celebrezze, supra; Mullins v. Cohen, 296 F.Supp. 181 (W.D.Va. 1969). The evidence does not persuade us that the jobs suggested by the hearing examiner are within the physical and mental capabilities of the claimant.

It is clear that the hearing examiner discounted much of Mr. Silcox's own testimony, especially that regarding his constant pain and lack of real mobility. That such pain and discomfort may give rise to disability cannot be disputed. Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967); Boggs v. Cohen, 298 F.Supp. 175 (W.D.Va.1969). The evidence of record does not refute the claimant's testimony, which was also confirmed by his wife and two other witnesses, and the Secretary could not properly ignore that evidence in evaluating claimant's ability to engage in gainful work. Wells v. Cohen, 296 F. Supp. 276 (W.D.Va.1969).

The examiner noted also that the objective medical evidence does not fully support many of the claimant's complaints. He took special note of Dr. Abernathy's observation on November 5, 1968, that the callouses and grease stains on the claimant's hands seemed to indicate that Mr. Silcox is able to do more than he alleged. The examiner further indicated that the claimant is not seeking current medical treatment and that his requests for current medical data were for purposes of establishing disability and not primarily for treatment. Apparently the examiner would not characterize claimant's ingestion of 30 prescribed pills daily nor his increasingly regular visits to Dr. Davis as current medical treatment. That claimant for reasons of seemingly no psychiatric or pathological origin may magnify disorders somewhat out of proportion to the evidence does not of itself determine the degree of his impairments nor does it establish that the claimant fails to meet the definition of disability under the Act. Dr. Abernathy's observation moreover can have little force against the more recent evidence of Mr. Silcox's ailments. Although his impressions bear

great weight we cannot accept the examiner's implications of claimant's ill motivation or malingering as probative in view of the consistent and uncontradicted medical evidence demonstrating medical ills.

■ We do not think that the Secretary's decision is supported by substantial evidence. Although the hearing examiner's individual finding, for example, that the claimant had no mental impairment itself severe enough to preclude gainful employment was proper, it is the cumulative effect of claimant's impairments that determine disability under the Act. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). We do not think that a person of claimant's age and marginal education, and whose only work experience is hard manual labor, could perform any substantially gainful activity considering the combined effects of his physical and mental disabilities. 20 CFR § 404.1502(c) (1971); *see also* Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965).

Accordingly, it is ordered that the decision of the Secretary is reversed, and that judgment in favor of the plaintiff is hereby granted.