Eddie D. JACKSON, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 7974.

United States District Court
E. D. South Carolina,
Orangeburg Division.

Feb. 15, 1964.

42. Note 15 supra.

W. T. Klapman, L. M. Fanning, Orangeburg, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., George E. Lewis, Asst. U. S. Atty., Columbia, S. C., for defendant.

DALTON, District Judge.

This action comes on for review by the court after a "final decision" by the Secretary of Health, Education and Welfare disallowing the plaintiff's claim for a "period of disability" and for disability insurance benefits under Sections 216(i) (42 U.S.C.A. § 416(i)), and 223 (42 U.S.C.A. § 423), respectively, of the Social Security Act, as amended. (hereinafter referred to as "the Act"). The plaintiff filed her original applications to establish a period of disability and her entitlement to disability insurance benefits on April 25, 1957, alleging that she became unable to work on April 1, 1944, because of dizziness, swelling legs and feet, shortness of breath and weakness as a result of hypertension (high blood pressure), dizziness, and myocarditis. These applications were denied on December 17, 1957, by the Bureau of Old Age and Survivors Insurance, hereinafter called. "the Bureau". The plaintiff requested a reconsideration of the denial. After reconsideration, the claim was again denied on April 9, 1958, and the plaintiff was informed that she could request a hearing before a referee. No hearing was requested.

On October 31, 1960, the plaintiff again filed an application to establish her disability alleging as her impairment, "chronic nephritis and irritable colon syndrome—heart trouble", and again stating that she became unable to work in 1944. This application was denied by the Bureau, reconsidered, and again denied. Plaintiff requested a hearing before a hearing examiner of the Department of Health, Education and Welfare. The hearing was granted and the case was reconsidered in its entirety. On March 7, 1962, the examiner found that the claimant was not entitled to a period of disability or to disability insurance benefits. The plaintiff then requested a review of the hearing examiner's decision and finally on January 8, 1963, the Appeals Council, after review, affirmed the examiner's decision finding that Mrs. Jackson was not "disabled" within the meaning of the Act.

It is provided in Section 205(g) of "the Act" (42 U.S.C.A. § 405(g)) that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

A "disability" as defined in both Section 216(i) and Section 223(c)(2) of the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." The sections also place the burden of persuasion to prove his disability on the complainant by providing that "An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

Under the provisions of the Act a person is not entitled to disability benefits or to the establishment of a period of disability unless he has become disabled at a time when he met the coverage requirement of the Act. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). It is established that plaintiff last met the requirements for "insured status" on De-

cember 31, 1946.[1] Thus, the Secretary correctly determined that an impairment having its inception subsequent to December 31, 1946, could not form a basis for an award in the plaintiff's favor.

The issues to be decided here, then, are whether the plaintiff has carried the burden of showing an impairment which created an inability to engage in substantial gainful activity on or before December 31, 1946, and also, whether there is substantial evidence to support the decision of the Secretary that she was not unable to engage in any substantial gainful activity on or before December 31, 1946.

The interrelation of these issues was discussed in Kerner v. Flemming, 283 F. 2d 916, 922 (2nd Cir. 1960) where the court said:

"* * * an applicant for a disability pension has the ultimate burden of persuasion and * * * a reviewing court ought not order the grant of a pension to an applicant who has not met this. However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer."[2]

Even though the burden of persuasion is ultimately to be carried by the plaintiff, disability insurance benefits statutes must be administered with informality, and satisfaction of the plaintiff's statutory burden is to be judged in a practical way. Butler v. Flemming, 288 F.2d 591 (5th Cir. 1961), Corbin v. Ribicoff, 204 F.Supp. 65 (W.D.S.C.1962).

The evidence in the case was as follows: Mrs. Jackson had a seventh grade education. Her only work experience was as a clerk and as assistant manager in ladies dress shops. She was so employed in April, 1944, when she alleges that she had to quit because of her impairments. At that time she was bedridden for a month and was under the care of a professional nurse. In her 1957 applications she alleged that her impairments were hypertension, dizziness and myocarditis. Plaintiff also testified that on several occasions she had suffered from "blackouts", swelling of the feet, and from collection of body fluids around the heart.

She stated that she was hospitalized for awhile after her illness began but during her hospitalization she was advised to work three or four days a week and, "when necessary, full time". She further testified that she was able to drive a car as long as it was not in severe traffic. However, she stated that she could not do housework for the first 6 years. There was also testimony from a registered nurse who had cared for Mrs. Jackson in 1944 stating that she had attended plaintiff "off and on" since 1944 for the purpose of giving shots but not to stay in the home. She did not know what type of heart medicine plaintiff had been taking but in her opinion, did not think plaintiff was able to work.

The medical evidence consists of four reports from Dr. William D. Whetsell, a general practitioner who has been plaintiff's physician since 1944. The first such report was filed after an examination on April 22, 1957, at which time the diagnosis of plaintiff's impairment was hypertensive cardiovascular disease accompanied by dizziness upon exertion, swelling of the feet and shortness of breath. Her blood pressure at this date was one hundred sixty-two over one hundred with weak and slightly muffled heart sounds. Her response to treatment was said to be

1. In the period of forty quarters ending December 31, 1946, Mrs. Jackson last met the twenty quarters earnings requirements effective in 1960. 42 U.S.C.A. § 416(i) (3).

2. The difference in this case and in Kerner is that in Kerner the evidence left no doubt that plaintiff met the requirement of a "medically determinable" physical impairment which could be expected to be of long-continued and indefinite duration.

"fair" but Dr. Whetsell reported that she had been under treatment "every one to two weeks since 1944." Rupturing of small blood vessels in skin at infrequent intervals was also reported.

In January of 1958 plaintiff was again examined by Dr. Whetsell, at which time her heart rate had increased and the quality was "fair". Her diagnosis at this time was hypertension, anemia and myocarditis. Her blood pressure was one hundred twenty over sixty and she was described as "responding poorly". She was at this time in Dr. Whetsell's opinion "totally and permanently disabled."

On a subsequent examination in November, 1960, Dr. Whetsell again, as in 1957, diagnosed plaintiff's condition as hypertensive cardiovascular disease with condition getting progressively worse. Her blood pressure was two hundred twenty over one hundred ten. In a letter dated February 14, 1961, Dr. Whetsell stated that in his opinion she was totally disabled and had been since 1944.

It is to be remembered that to be eligible for the benefits applied for, the plaintiff must show that she has been under a "disability" beginning not later than December 31, 1946, and continuing to the filing of her application. See Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962). Under the Social Security Regulations effective in 1960, promulgated by the Secretary under the authority of § 205(a) of the Act, it is provided by 20 C.F.R. § 404.1502 that diseases of the heart, lungs or blood vessels which have resulted in major loss of heart or lung reserve may justify a finding that an individual is under a disability. However, the effect of the regulation is that such findings should be evidenced by X-ray, electrocardiogram or other objective findings. The regulation in subsection (b) further provides:

"It must be established by medical evidence, and where necessary by appropriate medical tests, that the claimant's impairment * * * result in such a lack of ability to perform significant functions * * *

that such individual cannot, with his age, training, education and work experience, engage in any kind of substantial gainful activity." 20 C.F.R. § 404.1502(b).

§ 404.1510 states:

"An alleged impairment is medically determinable only if it can be verified by the use of clinical and laboratory diagnostic techniques."

Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), set forth four elements of proof to be considered in that case: (1) the objective medical evidence (i. e. the clinical findings), (2) expert medical opinions, (3) subjective evidence furnished by the plaintiff and (4) plaintiff's education, work history and age. It was made clear in Underwood that medical opinion evidence as to the ultimate fact of disability is of limited value.

Clearly the regulations explaining the Act and the cases construing it do not provide a definite formula for establishing a "disability" as defined in the Act. However, § 216(i) and § 223 of the Act do provide that the impairment must be "medically determinable" and thus, it would seem necessary that in order to sustain his burden of proof the plaintiff should have produced some substantial objective medical evidence in the nature of X-ray findings, electrocardiograms or clinical test reports, especially where the impairment alleged was a serious cardiovascular disease.

The court recognizes that plaintiff's illness occurred some years prior to her becoming eligible to claim benefits under the Act and that such medical records, if they ever did exist, might not have been indefinitely preserved. We are impressed, however, with the fact that nowhere in the record is there any indication that any such records ever existed or that any such tests were ever performed.

Plaintiff, in her 1960 application, alleges as her impairment, chronic nephritis (kidney trouble) and irritable colon syndrome, yet nowhere in any of the reports of Dr. Whetsell is there a reference to nephritis or colon trouble.

Mrs. Jackson stated in her 1960 application that she had "been growing worse and worse" since her 1957 application and could now "do nothing." This does not lend weight to the essential issue, that is, her condition in 1946.

The Appeals Council concluded upon a review of all the medical and nonmedical evidence that there was no basis upon which a finding could be made that the plaintiff was continuously "disabled" from December 31, 1946. This court is in agreement.

■■ It is well settled that if there is any "substantial evidence" supporting a finding by the Secretary, such finding must be affirmed. Looking at the record as a whole with this in mind, it appears that there is substantial evidence to support the Secretary's decision that the plaintiff was not "disabled" within the meaning of the Act.

Dr. Whetsell's treatment of the plaintiff was primarily for high blood pressure. Yet, according to the medical consultant for the Bureau, the blood pressure readings in 1957 and 1958 (162/100, 120/60, respectively) did not indicate a significant problem. The medical consultant reported that plaintiff could still engage in gainful employment. It was not until fourteen years after the expiration of plaintiff's insured status that a significant blood pressure elevation existed. Furthermore, the disability determination made by a medical consultant for the Bureau on March 10, 1958, indicates that when plaintiff was examined in January, 1958, she was not suffering from a hypertensive cardiovascular disease since her blood pressure at that time was abnormally low.

The plaintiff alleges that her impairments necessitated her termination of employment April 1, 1944, however, it appears in her testimony before the hearings examiner that she "filled in several times without pay" at the shop after she terminated her employment. This was while the shop was seeking a replacement for her.

After her illness in 1944 the plaintiff was hospitalized for "a while" but during this time she was advised that she should work three or four days a week and, when necessary, that she should work full time. Further, she was able to drive a car so long as it was not in city traffic or in other severe traffic conditions.

There is no evidence to indicate that the plaintiff ever attempted to work after 1944 and was not able to, either because of her condition, or because of the unavailability of a position involving duties she could perform. On the other hand, there is evidence to substantiate the finding of the Appeals Council that plaintiff was capable of engaging in the same or similar type work activity in which she had engaged prior to 1944.

The court finds, therefore, that the Secretary's decision was supported by substantial evidence and his motion for summary judgment must therefore be granted, and the complaint of plaintiff is dismissed.