John R. HARMON, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of
Health, Education and Wel-
fare, Defendant.

Civ. A. No. 1258.

United States District Court,
S. D. West Virginia,
Bluefield Division.

June 2, 1971.

Robert W. Hensley, Bluefield, W. Va., for plaintiff.

W. Warren Upton, U. S. Atty., Charleston, W. Va., Leo J. Meisel, Asst. U. S. Atty. Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U. S.C.A. 405(g) to review a final decision

of the Secreary of Health, Education and Welfare. A decision by a hearing examiner on June 28, 1970, became the final decision of the Secretary when the Appeals Council refused plaintiff's request for review on December 18, 1970. This final decision holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act.[1] This matter is now before the Court upon the cross motions of the parties for summary judgment, under Rule 56.

■ Plaintiff meets the special insured status requirements of the Social Security Act through the quarter ending March 31, 1974. Under the Act, 42 U.S.C.A. 416(i), an individual cannot be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. To satisfy this requirement, the claimant must establish that he suffered from such disability prior to December 18, 1970, the date the Secretary's decision became final. 42 U.S.C.A. 423(b) and 416(i) (2) (G). Therefore, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act, though such proof need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968) ; Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the Courts should surrender their "traditional functions," but that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the administrative finding is supported by substantial evidence and to see that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or granting unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962) ; Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court on this review is

---

[1]. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The 1968 Amendments of the Act imposed the additional requirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job exists for him, or whether he would be hired if he applied for work."

to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

Plaintiff was born on March 13, 1923, is married and has four children. He completed the tenth grade in school. As a youth he worked as a clerk in his father's store; his principal work experience has been as a coal miner, laborer, truck driver, assembly line worker and assistant mine foreman. He served in the armed forces from 1944 to 1946.

In 1952, plaintiff underwent back surgery and he has complained of back trouble since that time. He alleges disability since June 9, 1969, because of "back trouble, arthritis in back and legs."

Following is a summary of the medical evidence presented to the hearing examiner:

I. Plaintiff's treating physician, Dr. John Henry Murry, specialist in occupational medicine, reported having examined plaintiff during intervals from 1957 to the present time. On September 23, 1969, Dr. Murry diagnosed post discogenic-post surgical disability of the low back; lumbosacral arthritis and radiculitis of the right leg. He stated that plaintiff was disabled for work in the mines. The lumbar spine was tender on both sides; all motions of the back were limited. No pelvic tilt was noted; there was tenderness over the buttocks and the right ankle jerk was weak.

On December 2, 1969, Dr. Murry diagnosed cardiac ulcerations of the stomach, pre-pyloric ulcerations of the stomach, hiatus hernia with Schalzki's ring on the stomach, old back syndrome (post surgical) and radiculitis of the right lower extremity. This diagnosis was substantiated by X-ray findings. He further stated that plaintiff was permanently and totally disabled.

On March 10, 1970, Dr. Murry diagnosed deviated nasal septum (old nasal fracture), mild pulmonary emphysema, esophageal hiatus hernia and pre-pyloric ulcer, low back disability, lumbosacral arthritis (advanced) and residual sciatica (right). He again stated that plaintiff was permanently and totally disabled.

II. Plaintiff was examined on January 21, 1970, by Dr. J. Brookins Taylor, internist. He stated that he had difficulty bending, lifting, standing and walking, and that he had had back trouble since 1952, cramps in his legs for five or six years and low back pain and stiffness. He also complained of shortness of breath, coughing and wheezing. On examination, blood pressure was 122/80; thyroid gland was not enlarged; heart size, sound and rhythm were normal and there were no murmurs. The lungs were clear to auscultation and percussion and there was tenderness to the upper right quadrant. There was no inguinal hernia. A 50% loss of motion in the lumbar spine with tenderness was noted. Urinalysis was normal; electrocardiogram revealed normal sinus rhythm. G.I. series was normal. Plaintiff had difficulting squatting, bending, lifting and climbing stairs. Diagnostic impression was low back strain with probable unstable spine, pulmonary emphysema, chronic bronchitis, possible pulmonary silicosis and past medical history of peptic ulcer. Dr. Taylor recommended an orthopedic and neurogical consultation.

III. Plaintiff was examined by Dr. Jorge De La Piedra, orthopedic surgeon, on February 11, 1970. He complained of pain in the low back and right leg and stated that stooping, bending and lifting aggravated his condition. There were no gross abnormalities or atrophies of the musculo-skeletal system. There was moderate muscular spasm of the right paravertebral area. The four figure test on the left was 1+ and there was hypoesthesia of the lateral aspect of the right leg and weakness of the extensor of the right great toe. Flexion of the spine was 70% of normal; extension was 20°. Walking on heels, toes and

944

squatting gave plaintiff difficulty, while climbing to the table and undressing were performed without difficulty. X-ray examination of the lumbar spine revealed the alignment and height of the vertebrae were normal. Degenerative bony spurrings were found throughout; apophyseal joints were regular. No spondylolisthesis or spondylolysis were seen. There was marked narrowing in the intervertebral disc space (L5–S1). There was also evidence of disc degeneration. Diagnosis was chronic lumbosacral derangement, following removal of herniated intervertebral disc and osteoarthritis of the lumbar spine. The doctor suggested the wearing of a lumbar support and avoidance of bending, stooping, and climbing. He recommended sedentary work only.

The following additional medical evidence was submitted to the Appeals Counsel:

1. Plaintiff was examined on July 24, 1970, by Dr. Harold H. Kuhn. Examination revealed straight-leg raising test was positive bilaterally at 45°. There was tenderness over both calves, thighs and buttocks and "exquisite" tenderness over the old laminectomy scar. There was no ankle or knee jerk on the right side. Forward bending of the back was limited to 15°, extension was 10° and lateral bending was 10° to the right and left. There was marked tenderness over the neck and forward bending of the neck was limited to 30°, extension 20°, rotation 30° on each side and lateral bending 5° on each side. X-ray examination revealed calcification of the aorta in the lumbar spine; there was considerable narrowing in the L–5 interspace together with degenerative arthritic changes. Evidence of early degenerative arthritic changes in the cervical spine with loss of normal lumbar lordosis was noted. Diagnostic impression was myofacial and ligamentous strain, cervical area with degenerative arthritic change; lumbosacral arthritis; operative ruptured disc excision; bilateral sciatica and myofacial strain. He

stated that plaintiff's condition had gradually worsened over a period of time.

2. A report from Dr. David M. Wayne, psychiatrist, from the Bluefield Mental Health Center, was unremarkable except for a finding of mild anxiety neurosis.

3. The final medical exhibit in the record is an extensive pulmonary function study of the plaintiff by Dr. D. L. Rasmussen, of the Appalachian Regional Hospital, Beckley, West Virginia, dated 9–1–70. Ventilatory studies indicated moderate obstructive insufficiency; maximum breathing capacity was markedly diminished. Intra-pulmonary mixing was normal, however, there was a marked generalized hyperinflation of all lung volumes. There was a marked impairment of oxygen transfer. Dr. Rasmussen stated that the plaintiff "is severely incapacitated with significant ventilatory insufficiency, plus additional evidence of significant pulmonary parenchymal destruction." He estimated the overall loss of functional capacity at 75–85% due to pulmonary dysfunction. He further stated that plaintiff should be restricted to strictly light work levels.

Dr. Thomas E. Cook, counseling psychologist, testified as an expert vocational witness. He stated that, given plaintiff's age, education and work experience and assuming that plaintiff suffered from low back strain with probable unstable spine; chronic lumbosacral derangement following removal of herniated intervertebral disc; osteoarthritis of the lumbar spine; low back disability with residual sciatica; respiratory condition, variously diagnosed (pulmonary emphysema, chronic bronchitis, possible pulmonary silicosis); and a gastro-intestinal condition, variously diagnosed (peptic ulcer, esophageal hiatus hernia), plaintiff retained the capacity to engage in various jobs of a sedentary nature. These jobs included numerous vehicle operating jobs and several jobs in the category of "bench work." He stated that these jobs existed in significant numbers both in the general econo-

my and in plaintiff's surrounding region.

We think that the overwhelming evidence in this case supports the plaintiff's claim of disability. The evidence convinces us that the plaintiff is suffering from a degenerative illness. He has low back strain (unstable spine), chronic lumbosacral derangement, osteoarthritis of the lumbar spine, low back sciatica (residual), gastro-intestinal disorder (peptic ulcer, esophageal hiatus hernia) and a mild anxiety neurosis. In addition to these conditions, plaintiff has a pulmonary insufficiency which *alone* imposes a 75–85% restriction on his functional capacity, as reported by Dr. Rasmussen.

The Secretary relies heavily upon the vocational testimony of Dr. Cook to the effect that plaintiff had the residual capacity to perform numerous listed jobs. We do not think that this testimony is substantial evidence in this case. Many of the jobs listed by Dr. Cook required that plaintiff drive various vehicles in spite of the fact that the evidence discloses that he is unable to drive even his own car. In addition, and perhaps most importantly, the vocational witness testified without the benefit of the medical report of Dr. Rasmussen relative to plaintiff's severe pulmonary insufficiency.

Consequently, viewing the record as a whole and giving particular consideration to the extensive medical documentation with respect to the existence of serious pulmonary disease, serious impairments of the lumbar spine and gastro-intestinal disorder, as well as plaintiff's age, education and work experience, we are of the opinion that a disabling condition within the meaning of the Act has been established and that the Secretary's conclusion to the contrary lacks substantial evidentiary support.

Therefore, plaintiff is entitled to a period of disability and disability insurance benefits under the provisions of the Social Security Act upon his application filed herein on October 7, 1969, and his motion for summary judgment must be granted and defendant's like motion must be denied.